[Crim. No. 20433. Second Dist., Div. Five. July 10, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS JAY GRANTHAM, Defendant and Appellant.

COUNSEL

Clifford Douglas, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, John R. Evans and Frederick R. Millar, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KAUS, P. J.**—In an information filed by the District Attorney of San Luis Obispo County defendant was charged with sale of marijuana in violation

of section 11531 of the Health and Safety Code. Two prior felony convictions were alleged. Defendant pleaded not guilty and denied the priors. Trial was by jury, and defendant was found guilty as charged. The priors were admitted by defendant during trial.

Defendant's motion for a new trial was denied, and the prior convictions were struck for the purposes of sentencing. Probation was denied, and defendant was sentenced to state prison for the term prescribed by law. Defendant appeals.

## FACTS

Deputy Sheriff Osteyee was involved in narcotics investigations in cooperation with Agents Pierce and Lofgren of the state narcotics bureau. On September 23, 1970, Osteyee, Pierce, and Lofgren contacted two informants, both of whom had at that time charges of armed robbery pending against them,[1] one of whom said that defendant was engaged in selling LSD. It was determined that Lofgren, in the company of the informants, would attempt to make a purchase of LSD from defendant.

Lofgren and the informants went to defendant's apartment sometime in the morning. No one responded to their knock. Pierce and Osteyee watched from a nearby hillside. They returned at about 3:30 in the afternoon, again with Lofgren and the informants approaching the door while Pierce and Osteyee watched.

This time defendant and two of his friends were present. After Lofgren and the informants had entered, one of the informants, Rodweller, spoke with defendant, after which he turned to Lofgren and said "He doesn't have any acid, but he has some lids."

Defendant produced a large paper bag, reached in, pulled out a plastic baggie containing a green vegetable material, and handed it to the informant. Lofgren then walked over, reached in the bag and pulled out another. There were about twenty such "lids" in the paper bag.

Lofgren asked the price per lid, and defendant responded that it was 10 dollars. Lofgren purchased three, using 30 dollars in identified state funds. Lofgren then again inquired as to the availability of LSD, and defendant responded, "No, I'm out, and I don't think I'm going to deal it anymore."

On further inquiry defendant indicated he might be able to get some LSD for Lofgren, and it was agreed that Lofgren would return soon to pick

---

[1]The charges were dismissed on September 28, 1970.

it up. Defendant was arrested about a week later. At the trial Lofgren identified the three baggies he had purchased from defendant, and a chemist testified that they contained a useable quantity of marijuana. Defendant's apartment had been searched upon a warrant, but neither marijuana, LSD, nor state funds were found.

Defendant testified in his own behalf, contradicting Lofgren's testimony to a large extent. He testified that it was his practice to leave his apartment door unlocked in his absence to accommodate his friends. He had never seen nor met Rodweller, but he was acquainted with the other informant, Bayer. He had in the past purchased LSD from Bayer, and Bayer had, a few weeks before September 23, attempted to purchase heroin from defendant.

Defendant testified that he returned from the beach to his apartment on September 23, at about 2:30 or 3 p.m., and found a large paper bag of marijuana wrapped in baggies in his apartment. He asked around to try to determine who had put it there, but failed. He then put it in a dresser drawer, thinking that the owner would come for it.

At about 4 p.m. Bayer, Lofgren, and Rodweller knocked on the door and were admitted. Defendant had never seen Lofgren nor Rodweller before. Two of defendant's friends were also present at that time.

Bayer then asked defendant if he had any LSD for sale, and defendant said no. Bayer asked about marijuana, and defendant again said that he did not sell it. Bayer then said that he had left some marijuana there that morning, and asked for it back. Defendant produced the bag of marijuana, and Lofgren, Bayer, and Rodweller looked through it. Lofgren took out a few baggies and walked out the door. Bayer took the whole bag and followed him. Defendant testified that no money changed hands and he made no agreement to get LSD for anyone.

Defendant's account of the events was corroborated to a large extent by one of the friends who was present. Defendant also testified that he had been celebrating the birthdays of those born under the astrological sign of Virgo with many friends for most of the month, and had been drinking wine heavily for days before September 23. He was described by his friend as "half shot" at the time the agent and informants came to his apartment.

## DISCUSSION

Certain points which defendant makes on this appeal are easily disposed of.

Thus his claim that the trial court should have instructed the jury

concerning the significance of his alleged intoxicated condition (*People* v. *Foster,* 19 Cal.App.3d 649, 654-656 [97 Cal.Rptr. 94]) obviously has no merit. The intoxication could only affect the element of knowledge, which was amply proved by defendant's own testimony concerning his recollection of the events of September 23.

Similarly there is nothing to defendant's reliance on *People* v. *Mijares,* 6 Cal.3d 415 [99 Cal.Rptr. 139, 491 P.2d 1115]. Whichever version of the facts the jury believed, defendant's handling of the marijuana was not for the purpose of disposal. Even on his own evidence it was for safe keeping and return to the person whom he believed to be the owner.

Still, this leaves us with a totally unsatisfactory record on which to base an affirmance.

It is clear that—the abortive defense of diminished capacity aside—defendant was guilty of the charge against him, whichever version of the facts the jury chose to believe. Every element of the crime, on which the jury was properly instructed, was proved from the defendant's own mouth. The only defense in sight was entrapment. Moreover it became quite evident early in the trial that defense counsel had entrapment in mind when, in connection with an argument on an objection he stated: " . . . the thrust of our defense is that there was a preconceived and well thought out effort by the Sheriff's department in conjunction with other law enforcement agencies to place Mr. Grantham in the position of being arrested for a narcotics offense. . ."

Yet somehow all concerned combined to put the case in the hands of the jury without any instruction on entrapment. No such instruction was requested.

■ No case brought to our attention or found by us has ever expressly held that an entrapment instruction must be given *sua sponte*. *People* v. *Hawkins,* 210 Cal.App.2d 669, 671-672 [27 Cal.Rptr. 144] appears to hold the other way. *Hawkins,* however, antedates *People* v. *Perez,* 62 Cal. 2d 769, 775-776 [44 Cal.Rptr. 326, 401 P.2d 934] which recognizes that where the evidence shows entrapment ". . . the court has a duty to root its effects out of the trial upon its own initiative if necessary." Clearly that duty includes a duty to instruct on the defense—the only way the court has of making its rooting out effective. (See *People* v. *Moran,* 1 Cal.3d 755, 760-761 [83 Cal.Rptr. 411, 463 P.2d 763].)[2]

---

[2]Unless, of course, the defense appears as a matter of law, in which case a motion for a judgment of acquittal should be granted. (Pen. Code, § 1118.1.) That was not the case here. There was however ample evidence on which to base a finding of

This holding makes it unnecessary for us to discuss the question—obviously inherent in the record if the trial court were under no duty to instruct on entrapment without a request—of whether trial counsel was constitutionally ineffective (*People* v. *Ibarra,* 60 Cal.2d 460, 464-466 [34 Cal.Rptr. 863, 386 P.2d 487]); when he failed to request an instruction on entrapment. In this connection we might note, however, that the record demonstrates the trial court's hostility to any intimation that the law enforcement personnel involved could have been guilty of entrapping defendant. The court's attitude was such that it easily could have cowed a relatively inexperienced young trial lawyer, such as the record shows defendant's counsel to have been.

We will not burden this opinion with a detailed recital of the various instances in which the trial court displayed its aversion to any suggestion that the officers involved could have been guilty of improper conduct. Some, though by no means all, of the court's rulings are perhaps sustainable on technical grounds. We merely note for the record that there were at least three areas of inquiry in connection with the assertion of entrapment in which the defense was improperly blocked.[3]

1. Defendant should have been permitted to prove, if he could, that the investigation of September 23, 1970, was purposely delayed until he had passed his twenty-first birthday in order to preclude the possibility of a Youth Authority commitment;

2. Defendant was prevented from developing bias and hostility on the part of the sheriff's office by cross-examination, the court, in effect, ruling that he could not attempt to elicit such evidence from a prosecution witness. The court, later on, did not even stand by its own ground rule and would not permit defendant to testify to threats made against him by sheriff's deputies.

---

entrapment. The marijuana could have been planted in defendant's apartment during the allegedly abortive morning visit of September 23. In view of defendant's background it would have been a fair guess that on discovery he would not rush to the nearest bathroom to get rid of it. The claim of merely having returned the marijuana to the person who claimed to be its owner—Bayer—was no defense even though no consideration changed hands.

[3]The People argue these points as if they presented nothing but issues of the proper scope of cross-examination for impeachment purposes. Impeachment of testimony directed to the merits was the least of defendant's problems since—absent entrapment—he was guilty on his own evidence. The purpose of the blocked evidence was to demonstrate a motive for entrapping defendant, not for testifying falsely.

3. The court blocked evidence to the effect that defendant had filed a lawsuit against "the San Luis Obispo Sheriff's Office" for false arrest.[4]

The judgment is reversed.

Stephens, J., and Cole, J.,* concurred.

A petition for a rehearing was denied on July 28, 1972, the opinion was modified to read as printed above, and the following opinion was then rendered:

**THE COURT.**—The People petition this court for a rehearing. The petition is accompanied by a motion to augment the record on appeal with a transcript of the arguments to the jury.

Without wishing to encourage the postponement of motions to augment the record until after an adverse decision, we did grant it here. It does not change the result.

The augmented record merely demonstrates what we had suspected all along, namely that there is little resemblance between the law and the ad hoc rules under which this case was tried and argued. Both counsel assumed, expressly or impliedly, that if defendant's version of the events were true, he was not guilty. In other words both counsel read the word "furnishes" out of section 11531 of the Health and Safety Code. The trouble is, however, that the court's instructions very properly did not. Entrapment was still the only defense in sight, even if no one recognized it as such.

In any event, the conviction cannot stand. Even if it was the law of this trial that furnishing marijuana is not a violation of section 11531, the evidence which the court erroneously excluded on the issue of entrapment would have been just as relevant to the fictitious issue presented to the jury.

---

[4]The record does not indicate whether this litigation which apparently resulted from an arrest which took place about nine months before September 23, 1970, had been filed at the time of the investigation of that date. If it was filed thereafter, it would not, of course, be relevant to the question of motive, but might be admissible for impeachment.

*Assigned by the Chairman of the Judicial Council.