[Crim. No. 28230. Second Dist., Div. Two. Feb. 9, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
MELVYN LEMUEL DOUGLAS, Defendant and Appellant.

**COUNSEL**

Norman W. de Carteret, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders, and Randy Sue Morrison-Bruck, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FLEMING, Acting P. J.**—Melvyn Lemuel Douglas was convicted in a jury trial of selling heroin (Health & Saf. Code, § 11352, subd. (a)) and

possessing heroin for the purpose of sale (Health & Saf. Code, § 11351, subd. (a)). Outside the presence of the jury he admitted having been previously convicted of eight felony offenses. Concurrent state prison sentences were imposed with a finding that six of the eight prior felony convictions were true. He appeals contending: 1. The court improperly permitted defendant to be impeached at trial with his testimony given at the hearing pursuant to Penal Code section 1538.5. 2. The court erred in honoring the jury's request to listen to the tape recording after deliberations had commenced. 3. The suppression motion was improperly denied because Officer Burwell did not comply with Penal Code section 844. 4. The court erred in failing to *sua sponte* instruct on entrapment. 5. The evidence as to count I is insufficient to sustain the judgment because it was "inherently improbable." 6. The evidence is insufficient as to count II because it showed only that Earl Newton was in possession of the contraband.

We view the evidence in the light most favorable to the judgment as is required by the usual rule governing appellate review. On May 27, 1975, Police Officer Donnie Burwell, wearing an electronic transmitter, was working in an undercover narcotics capacity. He had received information that narcotic activity was taking place at 1300 North Raymond in the City of Pasadena. He went to that residence and defendant responded to his knock on the door. Burwell immediately offered to buy $25 worth of heroin and tendered to defendant $25 in recorded funds. Defendant took the money, closed the door, reopened it, and gave a tin foil bindle to Burwell. Officer Burwell started to open the bindle. As he was doing so, he asked if it was "good shit."[1] Defendant told Burwell not to open the bindle outside the apartment, grabbed Burwell by the arm, and pulled him into the residence leaving the door partially open.

The surveilling officers converged upon the apartment, announced their identity, and entered the apartment. Contemporaneously Burwell announced his true identity and told everyone in the apartment to "freeze." The $25 in recorded funds and seven other tin foil bindles were lying on a table in the room occupied by Burwell, defendant, Earl Newton, and Bobbie Ross. A "notice to quit the premises" made out in defendant's name, other documents with defendant's name and address (1300 North Raymond), and a ledger of previous narcotics transactions

---

[1] The use of the term "good shit" was a signal meaning that an illegal narcotics transaction had taken place and that the surveilling officers should converge upon the residence.

were also observed lying on the table and were seized. When booked, defendant indicated that he lived at 1300 North Raymond.

The People introduced expert testimony that the bindles seized contained heroin and that the heroin was packaged for the purpose of sale.

Testifying in his own behalf at trial, defendant denied furnishing any heroin to Officer Burwell, denied receiving any money from him in exchange for any heroin, and denied knowing that Earl Newton[2] was in possession of any heroin. Specifically, defendant asserted that in response to a knock he answered the door. Officer Burwell identified himself as "Jimmie" and only asked for Earl Newton. Defendant alleged that as he was opening the door, it was forced open striking him in the face. Police officers then ran into the apartment and placed everyone under arrest. Finally defendant asserted that as the police entered he saw Earl Newton throwing "some money and pieces of heroin on the floor."

Defendant earlier had testified at the hearing held pursuant to his Penal Code section 1538.5 motion as follows: "I heard a knock on the door so I waited a few seconds, and there was a second knock, so I went to the door and peeked out under a little glass pane where paint had been raised [sic]. I asked who was it. I couldn't see him in his face; he kept turning his face. He said, 'Jimmie.' He said, 'Jimmie' again, so I asked, 'What do you want?' And he said, 'I was told I could see a man for an apartment for rent, and, also, I want to cop a spoon.' And he turned his head completely then, and I waited a second or two, and when I opened the door I asked him again, 'What do you want?' And he said, 'The other man can show me the apartment. I want to cop a spoon.' "

We initially note that the only objection made below to the introduction of this prior inconsistent testimony was the assertion that it was not actually inconsistent.[3] After the trial court indicated that it would allow impeachment by the use of defendant's prior testimony given at the

---

[2]Earl Newton was originally a codefendant but was not held to answer at the preliminary hearing.

[3]The record reflects that before the introduction of defendant's prior inconsistent statements, defense counsel only said, "Your Honor, I'm going to submit that this is not impeaching at this time." The court responded, "Well, I permitted the cross-examination to be re-opened. [¶] I think it would be better to proceed on the ground of question and answer and not as to what he was asked at the prior hearing, unless he made some inconsistent statements, and then you may ask him about any different statements he made."

suppression hearing, the inconsistent testimony was read into the record pursuant to stipulation. ■ "[Q]uestions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection at the trial on the ground sought to be urged on appeal, [citations] . . ." (*People* v. *Welch* (1972) 8 Cal.3d 106, 115 [104 Cal.Rptr. 217, 501 P.2d 225].)

■ Considered on its merits, the contention also fails. The question is whether defendant's testimony at the suppression hearing can be used against him at trial for the limited purpose of impeachment. *Simmons* v. *United States* (1968) 390 U.S. 377 [19 L.Ed.2d 1247, 88 S.Ct. 967], held "that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." (*Simmons, supra,* at p. 394 [19 L.Ed.2d at p. 1259].) The court did not have before it in that case the more limited question of whether such testimony might be admissible for the purpose of impeachment. Language in a subsequent case—*Brown* v. *United States* (1973) 411 U.S. 223 [36 L.Ed.2d 208, 93 S.Ct. 1565]—indicates that the court regards *Simmons* as applying only to the direct use of suppression-hearing testimony in the case-in-chief. "Under the *Simmons* doctrine the defendant is permitted to establish the requisite standing by claiming 'possession' of incriminating evidence. If he is granted standing on the basis of such evidence, he may then nonetheless press for its exclusion; but, whether he succeeds or fails to suppress the evidence, his testimony on that score is not *directly* admissible against him in the trial." (*Brown* v. *United States, supra,* p. 228 [36 L.Ed.2d p. 213].) (Italics added.)

In deciding a similar question, whether defendant's testimony at a probation revocation hearing should be admissible at the criminal trial based on the same conduct, the California Supreme Court expressed the opinion that the language in *Simmons* did not preclude the use of such testimony for impeachment purposes. "Although it is not without ambiguity, this carefully wrought language [in *Simmons*] would seem to preclude only the 'affirmative' use of a defendant's testimony at a suppression hearing." (*People* v. *Coleman* (1975) 13 Cal.3d 867, 879, fn. 11 [120 Cal.Rptr. 384, 533 P.2d 1024]; accord, Cal. Search and Seizure Practice (Cont.Ed.Bar 1974) § 2.35.) Also, in *Walder* v. *United States* (1954) 347 U.S. 62 [98 L.Ed. 503, 74 S.Ct. 354] (decided before *Simmons*), it was held that defendant's testimony that he had never purchased, sold or possessed narcotics could be impeached by the testimony of a police

officer who had participated in an unlawful search and seizure of narcotics from defendant in another unrelated matter, although that suppression hearing had been successful and had resulted in dismissal of that indictment against defendant. The court in *Walder* stated that "It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths." (347 U.S. at p. 65 [98 L.Ed. at p. 507].)

The court in *Simmons* was basically concerned with an unfair tension existing between the exercise of two constitutional rights: defendant's Fourth Amendment right to have illegally seized evidence suppressed, and his Fifth Amendment privilege against self-incrimination. Permitting the prosecution to use testimony from the suppression hearing at the case-in-chief when defendant did not take the stand would have the impermissible effect of forcing a defendant to choose between the exercise of two constitutional rights; either he gives up his Fourth Amendment privilege by remaining silent at the suppression hearing, or he is denied his Fifth Amendment self-incrimination privilege when his suppression hearing testimony is read into the record at the full trial. The situation is different, however, when defendant takes the stand at the criminal trial but testifies in a manner inconsistent with his prior testimony. In the analogous probation revocation situation our Supreme Court held in *People* v. *Coleman, supra,* that testimony at the revocation hearing is inadmissible at the subsequent criminal trial *except* for the limited purpose of impeachment where there is a clear inconsistency. The court in *Coleman* pointed out that the intent of the exclusionary rule at trial is to encourage the fullest possible truthful disclosures at the revocation hearing, not to encourage lies or to support the "right of an accused to lie in his own behalf at trial." (13 Cal.3d at p. 892.)

Similarly in *United States* v. *Kahan* (1974) 415 U.S. 239 [39 L.Ed.2d 297, 94 S.Ct. 1179], the United States Supreme Court held that where a defendant lied as to his lack of funds at the arraignment on a motion to appoint counsel, such statements were admissible at his trial as false exculpatory statements evincing consciousness that the bank deposits in his name were incriminating. The court distinguished *Simmons,* saying that in *Kahan* there was no tension between defendant's Sixth Amendment right to counsel and his Fifth Amendment rights. Having no

constitutional right to lie at his criminal trial, defendant cannot complain that any valid constitutional claim of his is violated.

As stated in *Coleman, supra*, not all court procedures are invalid which cause defendants to make hard choices. The question is whether " 'compelling the election impairs to an appreciable extent any of the policies behind the rights involved' " (13 Cal.3d at p. 880, quoting from *McGautha* v. *California* (1971) 402 U.S. 183, 213 [28 L.Ed.2d 711, 729, 91 S.Ct. 1454]). As stated, defendant has no right to commit perjury at his criminal trial and is not entitled to a "false aura of veracity" (*People* v. *Beagle* (1972) 6 Cal.3d 441, 453 [99 Cal.Rptr. 313, 492 P.2d 1].) The court stated in *Kahan* that "[t]he protective shield of *Simmons* is not to be converted into a license for false representations . . . free from the risk that the claimant will be held accountable for his falsehood. [Citation.]" (*United States* v. *Kahan, supra*, 415 U.S. at p. 243 [39 L.Ed.2d at p. 301].) To paraphrase the holding in *Coleman*: at trial, as at the suppression hearing, a defendant who chooses to testify must testify truthfully if he is to have the benefit of an exclusionary rule at the trial. (See *People* v. *Coleman, supra*, 13 Cal.3d at p. 893.)

Our Supreme Court has held impermissible the use at trial for any purpose of extrajudicial statements obtained in violation of *Miranda* (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]). (*People* v. *Disbrow* (1976) 16 Cal.3d 101, 113 [127 Cal.Rptr. 360, 545 P.2d 272].) That case is distinguishable on two grounds. First, statements obtained in violation of *Miranda* carry some stigma of involuntariness and hence unreliability. Second, to permit the prosecution to use for impeachment purposes extrajudicial statements obtained during custodial interrogation without the presence of counsel is, assertedly, an invitation to official misconduct and a heavy burden on defendant's Fifth Amendment right to take the stand, given the inevitably prejudicial nature of such statements (see discussion in *Disbrow, supra*). However, with respect to judicial statements made during the course of a hearing on illegally seized evidence, there is nothing inherently unreliable about defendant's testimony given at a suppression hearing, and a prohibition against use of such evidence to prove the prosecution's case-in-chief provides sufficient deterrence of official misconduct.

We conclude that defendant's testimony at a suppression hearing may be used for impeachment purposes if he takes the stand at his trial and

testifies in a manner inconsistent with his pretrial testimony. This rule does not oblige a defendant "either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or . . . to waive his Fifth Amendment privilege against self-incrimination." (*Simmons* v. *United States, supra,* p. 394 [19 L.Ed.2d p. 1259]; *People* v. *Coleman, supra,* p. 879.) He may testify *truthfully* at his suppression motion should he elect to do so.[4] In the event that he chooses to testify *truthfully* at trial, he runs no risk of being impeached. He has, however, no right to commit perjury and is not entitled to a "false aura of veracity." (*People* v. *Beagle, supra,* 6 Cal.3d at p. 453.) If his trial testimony is inconsistent with that previously given at the suppression hearing, he may be impeached therewith. (See Evid. Code, §§ 780, 1235.)

■ The trial court properly honored the jury's request to listen to the tape recording of the events surrounding Officer Burwell's entry into defendant's apartment. The tape recording had been admitted into evidence without objection. "[T]he law allows the jury to take with them into the jury room all exhibits except depositions." (*People* v. *Beverly* (1965) 233 Cal.App.2d 702, 718 [43 Cal.Rptr. 743]; see also Pen. Code, § 1137.) Defendant's arguments that by honoring the jury's request, he was denied his right to counsel, right to be present, and right to a record on appeal are frivolous. The mere fact that the bailiff manually operated the tape recorder pursuant to the order of the court is no indication that he was present during actual jury deliberations.

■ Defendant's contention that the seizure of the heroin inside the apartment was violative of Penal Code section 844[5] is without merit. In the instant case, defendant's version of how Officer Burwell entered the apartment was, to say the least, at variance with that given by Officer Burwell. In denying the motion to suppress, the trial court said, "I don't accept the testimony of the defendant. . . . I accept the testimony of the officer. I will admit the evidence." Such express factual finding is binding on appeal. (*People* v. *Rios* (1976) 16 Cal.3d 351, 357 [128 Cal.Rptr. 5, 546 P.2d 293].) There was substantial evidence that defendant not only consented to Officer Burwell's entry, but literally forced Burwell into the apartment. In such instance, the entry is consensual and Penal Code

---

[4]Testimony given by the defendant at a hearing pursuant to Penal Code section 1538.5 should be, of course, carefully limited to the issues raised by the suppression motion.

[5]Penal Code section 844 in pertinent part provides: "To make an arrest . . . a peace officer may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

section 844 does not apply. (*Mann* v. *Superior Court* (1970) 3 Cal.3d 1, 9 [88 Cal.Rptr. 380, 472 P.2d 468].)

■ Defendant's contention that the court should have *sua sponte* instructed the jury on entrapment is without merit. "[T]he duty to give instructions, *sua sponte,* on particular defenses and their relevance to the charged offense arises only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case. Indeed, this limitation on the duty of the trial court is necessary not only because it would be unduly burdensome to require more of trial judges, but also because of the potential prejudice to defendants if instructions were given on defenses inconsistent with the theory relied upon. 'Appellate insistence upon *sua sponte* instructions which are inconsistent with defense trial theory or not clearly demanded by the evidence would hamper defense attorneys and put trial judges under pressure to glean legal theories and winnow the evidence for remotely tenable and sophistical instructions.' [Citation.]" (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 716-717 [112 Cal.Rptr. 1, 518 P.2d 913].)

The instant case is a classic example of the foregoing rule. Defendant's theory of defense was denial of the sale and lack of knowledge of the remaining bindles of heroin, ownership of which appellant sought to attribute to Earl Newton. There was no evidence, let alone substantial evidence, of entrapment. Nor was it apparent that defendant was relying on the defense of entrapment.

Reliance on *People* v. *Grantham* (1972) 26 Cal.App.3d 661 [103 Cal.Rptr. 262], for the proposition that the court has a *sua sponte* duty to instruct on the theory of entrapment, *supra,* at page 665, is misplaced. The factual situation in *People* v. *Grantham* is grossly dissimilar to that of the instant case. In addition, the court in *People* v. *Pijal* (1973) 33 Cal.App.3d 682, 692 [109 Cal.Rptr. 230], disagreed with and declined to follow the reasoning of *People* v. *Grantham, supra.* We agree with the views expressed in *People* v. *Pijal, supra,* as, to some extent, did our Supreme Court when it denied a hearing therein.

■ Defendant's contention that the evidence as to count I is insufficient because it is "inherently improbable" is without merit. There is nothing physically impossible, patently false, or even justifiably suspicious about the evidence here credited by the jury. (*People* v. *Meals*

(1975) 48 Cal.App.3d 215, 222 [121 Cal.Rptr. 742]; *People* v. *Mayberry* (1975) 15 Cal.3d 143, 150 [125 Cal.Rptr. 745, 542 P.2d 1337]; *People* v. *Thornton,* (1974) 11 Cal.3d 738, 754 [114 Cal.Rptr. 467, 523 P.2d 267].)

■ Equally unmeritorious is defendant's contention that as a matter of law he was not in possession of nor did he have knowledge of the narcotic nature of the bindles found on the table because they also were in close proximity to Earl Newton and were similar to a bindle later found on Earl Newton's person. In this case, there was substantial evidence that defendant was in joint possession of the bindles seized from the table, that he was aware of their narcotic nature, and that he intended to sell them to any willing buyer. (See *People* v. *Rice* (1976) 59 Cal.App.3d 998, 1002-1003 [131 Cal.Rptr. 330]; *People* v. *Glass* (1975) 44 Cal.App.3d 772 [118 Cal.Rptr. 797].)

The judgment is affirmed.

Compton, J., and Beach, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 7, 1977. Bird, C. J., and Sullivan, J.,* were of the opinion that the petition should be granted.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.