# UNITED STATES *v.* SALVUCCI ET AL.

No. 79–244.   Argued March 26, 1980—Decided June 25, 1980

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, WHITE, BLACKMUN, POWELL, and STEVENS, JJ., joined. MARSHALL, J., filed a dissenting opinion, in which BRENNAN, J., joined, *post*, p. 95.

*Mark I. Levy* argued the cause for the United States. With him on the briefs were *Solicitor General McCree, Assistant Attorney General Heymann,* and *Deputy Solicitor General Frey.*

*Willie J. Davis,* by appointment of the Court, 444 U. S. 1067, argued the cause and filed a brief for respondent Salvucci. *John C. McBride,* by appointment of the Court, 444 U. S. 1067, argued the cause and filed a brief for respondent Zackular.

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

Relying on *Jones* v. *United States,* 362 U. S. 257 (1960), the Court of Appeals for the First Circuit held that since respondents were charged with crimes of possession, they were

entitled to claim "automatic standing" to challenge the legality of the search which produced the evidence against them, without regard to whether they had an expectation of privacy in the premises searched. 599 F. 2d 1094 (1979). Today we hold that defendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated. The automatic standing rule of *Jones* v. *United States, supra,* is therefore overruled.

## I

Respondents, John Salvucci and Joseph Zackular, were charged in a federal indictment with 12 counts of unlawful possession of stolen mail, in violation of 18 U. S. C. § 1708. The 12 checks which formed the basis of the indictment had been seized by the Massachusetts police during the search of an apartment rented by respondent Zackular's mother. The search was conducted pursuant to a warrant.

Respondents filed a motion to suppress the checks on the ground that the affidavit supporting the application for the search warrant was inadequate to demonstrate probable cause. The District Court granted respondents' motions and ordered that the checks be suppressed.[1] The Government sought reconsideration of the District Court's ruling, contending that respondents lacked "standing" to challenge the constitutionality of the search. The District Court reaffirmed its suppression order and the Government appealed.

The Court of Appeals affirmed, holding that respondents had "standing" and the search warrant was constitutionally inadequate. The court found that the respondents were not required to establish a legitimate expectation of privacy in the premises searched or the property seized because they were entitled to assert "automatic standing" to object to the search

---

[1] The District Court held that the affidavit was deficient because the affiant relied on double hearsay, and failed to specify the dates on which information included in the affidavit had been obtained.

and seizure under *Jones* v. *United States, supra*. The court observed that the vitality of the *Jones* doctrine had been challenged in recent years, but that "[u]ntil the Supreme Court rules on this question, we are not prepared to hold that the automatic standing rule of *Jones* has been . . . overruled. . . . That is an issue which the Supreme Court must resolve." 599 F. 2d, at 1098. The Court of Appeals was obviously correct in its characterization of the status of *Jones,* and we granted certiorari in order to resolve the controversy.[2]  444 U. S. 989 (1979).

## II

As early as 1907, this Court took the position that remedies for violations of constitutional rights would only be afforded to a person who "belongs to the class for whose sake the constitutional protection is given." *Hatch* v. *Reardon,* 204 U. S. 152, 160. The exclusionary rule is one form of remedy afforded for Fourth Amendment violations, and the Court in *Jones* v. *United States* held that the *Hatch* v. *Reardon* principle properly limited its availability. The Court reasoned that ordinarily "it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he . . . establish, that he himself was the victim of an invasion of privacy." 362 U. S., at 261. Subsequent attempts to vicariously assert violations of the Fourth Amendment rights of others have been repeatedly rejected by this Court. *Alderman* v. *United States,* 394 U. S. 165, 174 (1969); *Brown* v. *United States,* 411 U. S.

---

[2] The Courts of Appeals have divided on the continued applicability of the automatic standing rule. The Sixth Circuit abandoned the rule after our decision in *Simmons* v. *United States,* 390 U. S. 377 (1968). See, *e. g., United States* v. *Hunter,* 550 F. 2d 1066 (1977). Most of the remaining Circuits appear to have retained the rule, but many with "misgivings." See, *e. g., United States* v. *Oates,* 560 F. 2d 45, 52 (CA2 1977); *United States* v. *Edwards,* 577 F. 2d 883, 892 (CA5), cert. denied, 439 U. S. 968 (1978).

223, 230 (1973). Most recently, in *Rakas* v. *Illinois*, 439 U. S. 128 (1978), we held that "it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the [exclusionary] rule's protections." *Id.,* at 134.

Even though the Court in *Jones* recognized that the exclusionary rule should only be available to protect defendants who have been the victims of an illegal search or seizure, the Court thought it necessary to establish an exception. In cases where possession of the seized evidence was an essential element of the offense charged, the Court held that the defendant was not obligated to establish that his own Fourth Amendment rights had been violated, but only that the search and seizure of the evidence was unconstitutional.[3] Upon such a showing, the exclusionary rule would be available to prevent the admission of the evidence against the defendant.

The Court found that the prosecution of such possessory offenses presented a "special problem" which necessitated the departure from the then settled principles of Fourth Amendment "standing."[4] Two circumstances were found to require this exception. First, the Court found that in order to establish standing at a hearing on a motion to suppress, the defendant would often be "forced to allege facts the proof of which would tend, if indeed not be sufficient, to convict him," since several Courts of Appeals had "pinioned a defendant within this dilemma" by holding that evidence adduced at the motion

---

[3] In *Brown* v. *United States*, 411 U. S. 223, 229 (1973), this Court clarified that the automatic standing rule of *Jones* was applicable only where the offense charged "possession of the seized evidence at the time of the contested search and seizure."

[4] In *Rakas*, this Court discarded reliance on concepts of "standing" in determining whether a defendant is entitled to claim the protections of the exclusionary rule. The inquiry, after *Rakas*, is simply whether the defendant's rights were violated by the allegedly illegal search or seizure. Because *Jones* was decided at a time when "standing" was designated as a separate inquiry, we use that term for the purposes of re-examining that opinion.

to suppress could be used against the defendant at trial. 362 U. S., at 262. The Court declined to embrace any rule which would require a defendant to assert his Fourth Amendment claims only at the risk of providing the prosecution with self-incriminating statements admissible at trial. The Court sought resolution of this dilemma by relieving the defendant of the obligation of establishing that his Fourth Amendment rights were violated by an illegal search or seizure.

The Court also commented that this rule would be beneficial for a second reason. Without a rule prohibiting a Government challenge to a defendant's "standing" to invoke the exclusionary rule in a possessory offense prosecution, the Government would be allowed the "advantage of contradictory positions." *Id.*, at 263. The Court reasoned that the Government ought not to be allowed to assert that the defendant possessed the goods for purposes of criminal liability, while simultaneously asserting that he did not possess them for the purposes of claiming the protections of the Fourth Amendment. The Court found that "[i]t is not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government." *Id.*, at 263–264. Thus in order to prevent both the risk that self-incrimination would attach to the assertion of Fourth Amendment rights, as well as to prevent the "vice of prosecutorial self-contradiction," see *Brown* v. *United States, supra,* at 229, the Court adopted the rule of "automatic standing."

In the 20 years which have lapsed since the Court's decision in *Jones,* the two reasons which led the Court to the rule of automatic standing have likewise been affected by time. This Court has held that testimony given by a defendant in support of a motion to suppress cannot be admitted as evidence of his guilt at trial. *Simmons* v. *United States,* 390 U. S. 377 (1968). Developments in the principles of Fourth Amendment standing, as well, clarify that a prosecutor may, with legal consistency and legitimacy, assert that a defendant

charged with possession of a seized item did not have a privacy interest violated in the course of the search and seizure. We are convinced not only that the original tenets of the *Jones* decision have eroded, but also that no alternative principles exist to support retention of the rule.

## A

The "dilemma" identified in *Jones,* that a defendant charged with a possessory offense might only be able to establish his standing to challenge a search and seizure by giving self-incriminating testimony admissible as evidence of his guilt, was eliminated by our decision in *Simmons* v. *United States, supra.* In *Simmons,* the defendant Garrett was charged with bank robbery. During the search of a codefendant's mother's house, physical evidence used in the bank robbery, including a suitcase, was found in the basement and seized. In an effort to establish his standing to assert the illegality of the search, Garrett testified at the suppression hearing that the suitcase was similar to one he owned and that he was the owner of the clothing discovered inside the suitcase. Garrett's motion to suppress was denied, but his testimony was admitted into evidence against him as part of the Government's case-in-chief at trial. This Court reversed, finding that "a defendant who knows that his testimony may be admissible against him at trial will sometimes be deterred from presenting the testimonial proof of standing necessary to assert a Fourth Amendment claim." 390 U. S., at 392–393. The Court found that, in effect, the defendant was

> "obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another. We therefore hold that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment

grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." *Id.*, at 394.

This Court's ruling in *Simmons* thus not only extends protection against this risk of self-incrimination in all of the cases covered by *Jones*, but also grants a form of "use immunity" to those defendants charged with nonpossessory crimes. In this respect, the protection of *Simmons* is therefore broader than that of *Jones*. Thus, as we stated in *Brown* v. *United States*, 411 U. S., at 228, "[t]he self-incrimination dilemma, so central to the *Jones* decision, can no longer occur under the prevailing interpretation of the Constitution [in *Simmons*]."

## B

This Court has identified the self-incrimination rationale as the cornerstone of the *Jones* opinion. See *Brown* v. *United States, supra,* at 228. We need not belabor the question of whether the "vice" of prosecutorial contradiction could alone support a rule countenancing the exclusion of probative evidence on the grounds that someone other than the defendant was denied a Fourth Amendment right. The simple answer is that the decisions of this Court, especially our most recent decision in *Rakas* v. *Illinois*, 439 U. S. 128 (1978), clearly establish that a prosecutor may simultaneously maintain that a defendant criminally possessed the seized good, but was not subject to a Fourth Amendment deprivation, without legal contradiction. To conclude that a prosecutor engaged in self-contradiction in *Jones*, the Court necessarily relied on the unexamined assumption that a defendant's possession of a seized good sufficient to establish criminal culpability was also sufficient to establish Fourth Amendment "standing." This assumption, however, even if correct at the time, is no longer so.[5]

---

[5] Respondent Salvucci cites this Court's decision in *United States* v. *Jeffers,* 342 U. S. 48 (1951), as support for the view that legal ownership

The person in legal possession of a good seized during an illegal search has not necessarily been subject to a Fourth Amendment deprivation.[6] As we hold today in *Rawlings* v. *Kentucky, post,* p. 98, legal possession of a seized good is not a proxy for determining whether the owner had a Fourth Amendment interest, for it does not invariably represent the protected Fourth Amendment interest. This Court has repeatedly repudiated the notion that "arcane distinctions developed in property and tort law" ought to control our Fourth Amendment inquiry. *Rakas* v. *Illinois, supra,* at 143. In another section of the opinion in *Jones* itself, the Court concluded that, "it is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law in evolving the body of private property law. . . ." 362 U. S., at 266. See also *Mancusi* v. *DeForte,* 392 U. S. 364 (1968); *Warden* v. *Hayden,* 387 U. S. 294 (1967).

While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, see *Rakas, supra,* at 144, n. 12, property rights are neither the beginning nor the end of this Court's inquiry. In *Rakas,* this Court held that an illegal search only violates the rights of those who have "a legitimate

---

of the seized good was sufficient to confer Fourth Amendment "standing." In *Rakas,* however, we stated that "[s]tanding in *Jeffers* was based on Jeffers' possessory interest in *both* the premises searched and the property seized." 439 U. S., at 136. (Emphasis added.)

[6] Legal possession of the seized good may be sufficient in some circumstances to entitle a defendant to seek the return of the seized property if the seizure, as opposed to the search, was illegal. See, *e. g., United States* v. *Lisk,* 522 F. 2d 228 (CA7 1975) (Stevens, J.), cert. denied, 423 U. S. 1078 (1976), although in that case the property was ultimately found not to have been illegally seized. We need not explore this issue since respondents did not challenge the constitutionality of the seizure of the evidence.

expectation of privacy in the invaded place." 439 U. S., at 140. See also *Mancusi* v. *DeForte, supra.*

We simply decline to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched. In *Jones,* the Court held not only that automatic standing should be conferred on defendants charged with crimes of possession, but, alternatively, that Jones had actual standing because he was "legitimately on the premises" at the time of the search. In *Rakas,* this Court rejected the adequacy of this second *Jones* standard, finding that it was "too broad a gauge for measurement of Fourth Amendment rights." 439 U. S., at 142. In language appropriate to our consideration of the automatic standing rule as well, we reasoned:

> "In abandoning 'legitimately on premises' for the doctrine that we announce today, we are not forsaking a time-tested and workable rule, which has produced consistent results when applied, solely for the sake of fidelity to the values underlying the Fourth Amendment. Rather, we are rejecting blind adherence to a phrase which at most has superficial clarity and which conceals underneath that thin veneer all of the problems of line drawing which must be faced in any conscientious effort to apply the Fourth Amendment. Where the factual premises for a rule are so generally prevalent that little would be lost and much would be gained by abandoning case-by-case analysis, we have not hesitated to do so. . . . We would not wish to be understood as saying that legitimate presence on the premises is irrelevant to one's expectation of privacy, but it cannot be deemed controlling." *Id.,* at 147–148.

As in *Rakas,* we again reject "blind adherence" to the other underlying assumption in *Jones* that possession of the seized good is an acceptable measure of Fourth Amendment interests. As in *Rakas,* we find that the *Jones* standard "creates too

broad a gauge for measurement of Fourth Amendment rights" and that we must instead engage in a "conscientious effort to apply the Fourth Amendment" by asking not merely whether the defendant had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched. Thus neither prosecutorial "vice," nor the underlying assumption of *Jones* that possession of a seized good is the equivalent of Fourth Amendment "standing" to challenge the search, can save the automatic standing rule.

## C

Even though the original foundations of *Jones* are no longer relevant, respondents assert that principles not articulated by the Court in *Jones* support retention of the rule. First, respondents maintain that while *Simmons* v. *United States,* 390 U. S. 377 (1968), eliminated the possibility that the prosecutor could use a defendant's testimony at a suppression hearing as substantive evidence of guilt at trial, *Simmons* did not eliminate other risks to the defendant which attach to giving testimony on a motion to suppress.[7] Principally, respondents assert that the prosecutor may still be permitted to use the defendant's testimony to impeach him at trial.[8] This Court

---

[7] The respondents argue that the prosecutor's access to the suppression testimony will unfairly provide the prosecutor with information advantageous to the preparation of his case and trial strategy. This argument, however, is surely applicable equally to possessory and nonpossessory offenses. This Court has clearly declined to expand the *Jones* rule to other classes of offenses, *Alderman* v. *United States,* 394 U. S. 165 (1969); *Brown* v. *United States,* 411 U. S. 223 (1973), and thus respondents' rationale cannot support the retention of a special rule of automatic standing here.

[8] A number of courts considering the question have held that such testimony is admissible as evidence of impeachment. *Gray* v. *State,* 43 Md. App. 238, 403 A. 2d 853 (1979); *People* v. *Douglas,* 66 Cal. App. 3d 998, 136 Cal. Rptr. 358 (1977); *People* v. *Sturgis,* 58 Ill. 2d 211, 317 N. E. 2d 545 (1974). See also *Woody* v. *United States,* 126 U. S. App. D. C. 353, 354–355, 379 F. 2d 130, 131–132 (Burger, J.), cert. denied, 389 U. S. 961 (1967).

has not decided whether *Simmons* precludes the use of a defendant's testimony at a suppression hearing to impeach his testimony at trial.[9] But the issue presented here is quite different from the one of whether "use immunity" extends only through the Government's case-in-chief, or beyond that to the direct and cross-examination of a defendant in the event he chooses to take the stand. That issue need not be and is not resolved here, for it is an issue which more aptly relates to the proper breadth of the *Simmons* privilege, and not to the need for retaining automatic standing.

Respondents also seek to retain the *Jones* rule on the grounds that it is said to maximize the deterrence of illegal police conduct by permitting an expanded class of potential challengers. The same argument has been rejected by this Court as a sufficient basis for allowing persons whose Fourth Amendment rights were not violated to nevertheless claim the benefits of the exclusionary rule. In *Alderman* v. *United States,* 394 U. S., at 174–175, we explicitly stated:

> "The deterrent values of preventing the incrimination of those whose rights the police have violated have been considered sufficient to justify the suppression of probative evidence even though the case against the defendant is weakened or destroyed. We adhere to that judgment. But we are not convinced that the additional benefits of extending the exclusionary rule to other defendants would justify further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth."

See also *Rakas* v. *Illinois,* 439 U. S., at 137; *United States* v. *Ceccolini,* 435 U. S. 268, 275–276 (1978); *United States* v. *Calandra,* 414 U. S. 338, 350–351 (1974). Respondents' de-

---

[9] This Court has held that "the protective shield of *Simmons* is not to be converted into a license for false representations. . . ." *United States* v. *Kahan,* 415 U. S. 239, 243 (1974).

terrence argument carries no special force in the context of possessory offenses and we therefore again reject it.

We are convinced that the automatic standing rule of *Jones* has outlived its usefulness in this Court's Fourth Amendment jurisprudence. The doctrine now serves only to afford a windfall to defendants whose Fourth Amendment rights have *not* been violated. We are unwilling to tolerate the exclusion of probative evidence under such circumstances since we adhere to the view of *Alderman* that the values of the Fourth Amendment are preserved by a rule which limits the availability of the exclusionary rule to defendants who have been subjected to a violation of their Fourth Amendment rights.

This action comes to us as a challenge to a pretrial decision suppressing evidence. The respondents relied on automatic standing and did not attempt to establish that they had a legitimate expectation of privacy in the areas of Zackular's mother's home where the goods were seized. We therefore think it appropriate to remand so that respondents will have an opportunity to demonstrate, if they can, that their own Fourth Amendment rights were violated. See *Combs* v. *United States,* 408 U. S. 224 (1972).

*Reversed and remanded.*

MR. JUSTICE MARSHALL, with whom MR. JUSTICE BRENNAN joins, dissenting.

Today the Court overrules the "automatic standing" rule of *Jones* v. *United States,* 362 U. S. 257 (1960), because it concludes that the rationale underpinning the rule has been "eroded," *ante,* at 89. I do not share that view.

A defendant charged with a possessory offense who moves to suppress the items he is charged with possessing must now establish at the suppression hearing that the police conduct of which he complains violated his personal Fourth Amendment rights. In many cases, a defendant will be able to make the required showing only by taking the stand and testifying about his interest in the place searched and the evidence

seized; the need for the defendant's own testimony may, in fact, be more likely to arise in possession cases than in cases involving other types of offenses. The holding in *Jones* was premised, in part, on the unfairness of "pinion[ing] a defendant within th[e] dilemma," 362 U. S., at 262, of being able to assert his Fourth Amendment claim only by relinquishing his Fifth Amendment privilege against self-incrimination. The Court finds that this dilemma no longer exists because *Simmons* v. *United States,* 390 U. S. 377 (1968), held that testimony given by a defendant in support of a motion to suppress "may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." *Id.,* at 394.

I cannot agree that *Simmons* provides complete protection against the "self-incrimination dilemma," *Brown* v. *United States,* 411 U. S. 223, 228 (1973). Respondents contend that the testimony given at the suppression hearing might be held admissible for impeachment purposes and, while acknowledging that that question is not before us in this case, the majority broadly hints that this is so. *Ante,* at 94, n. 9; see *Harris* v. *New York,* 401 U. S. 222 (1971); *United States* v. *Kahan,* 415 U. S. 239 (1974); *United States* v. *Havens,* 446 U. S. 620 (1980); *Jenkins* v. *Anderson,* 447 U. S. 231 (1980); but see *New Jersey* v. *Portash,* 440 U. S. 450 (1979). The use of the testimony for impeachment purposes would subject a defendant to precisely the same dilemma, unless he was prepared to relinquish his constitutional right to testify in his own defense, and would thereby create a strong deterrent to asserting Fourth Amendment claims. One of the purposes of *Jones* and *Simmons* was to remove such obstacles. See *Simmons, supra,* at 392–394. Moreover, the opportunity for cross-examination at the suppression hearing may enable the prosecutor to elicit incriminating information beyond that offered on direct examination to establish the requisite Fourth Amendment interest. Even if such information could not be introduced at the subsequent trial, it might be helpful to the prosecution in developing its case or deciding its trial strategy. The fur-

nishing of such a tactical advantage to the prosecution should not be the price of asserting a Fourth Amendment claim. *Simmons*, therefore, does not eliminate the possibility that a defendant will be deterred from presenting a Fourth Amendment claim because of "the risk that the words which he utters may later be used to incriminate him." *Simmons, supra,* at 393. Accordingly, I conclude that this part of the reasoning in *Jones* remains viable.

A second ground for relieving the defendant charged with possession from the necessity of showing "an interest in the premises searched or the property seized" was that "to hold to the contrary . . . would be to permit the Government to have the advantage of contradictory positions as a basis for conviction," *Jones,* 362 U. S., at 263. That is, since "possession both convicts and confers standing," *ibid.,* the Government, which had charged the defendant with possession, would not be permitted to deny that he had standing. By holding today in *Rawlings* v. *Kentucky, post,* p. 98, that a person may assert a Fourth Amendment claim only if he has a privacy interest in the area that was searched, the Court has, to be sure, done away with that logical inconsistency. For reasons stated in my dissenting opinion in that case, I believe that holding is diametrically opposed to the meaning of the Fourth Amendment as it has always been understood.

In sum, I find neither of the Court's grounds for abandoning *Jones* persuasive. The automatic standing rule is a salutary one which protects the rights of defendants and eliminates the wasteful requirement of making a preliminary showing of standing in pretrial proceedings involving possessory offenses, where the charge itself alleges an interest sufficient to support a Fourth Amendment claim. I dissent.