OPINION
Defendant-appellant, Christopher Riddle, appeals his conviction for child endangerment, with a specification of serious physical harm.
On Saturday, April 20, 1996, appellant was home with fourteen-month-old Kelly Phillips, son of appellant's girlfriend, Kori Long. At approximately 1:30 p.m., Long went shopping with a friend and did not return until 7:00 p.m. During that time, appellant was responsible for Kelly. According to appellant, he was awakened from a nap by a kicking at his bed and found Kelly blue and in distress. Appellant unsuccessfully tried the Heimlich maneuver, then attempted to remove whatever was obstructing Kelly's breathing, but Kelly's teeth were clenched. Finally, appellant put Kelly over his lap and struck him five to eight times on the back of the head, eventually dislodging a breath saver from Kelly's mouth. He then vigorously shook the child and smacked his cheeks. Appellant testified, at this point, the child was not blue and was breathing. He put Kelly in bed and concluded the crisis was over.
When Long returned, appellant told her what had happened. She immediately checked Kelly and found that he was not breathing properly and called 911 for emergency help. At the hospital, the diagnosis was a subdermal hematoma and a retinal hemorrhage. Dr. Robert Shapiro, who examined Kelly at the hospital, concluded that the injuries were consistent with child abuse, specifically shaken baby syndrome.
Barry Creighton, an investigator with the Brown County Department of Human Services, went to the hospital that evening. After giving appellant his Miranda rights, Creighton asked appellant about the incident. Then at 1:59 a.m. on April 20th, he again read appellant his Miranda rights and interviewed appellant, this time tape recording the questioning. Appellant eventually moved the trial court to suppress all statements made during the questioning by Creighton, arguing, inter alia, that appellant did not adequately waive his Miranda rights. A hearing was held on the motion to suppress, which was overruled by the trial court in a March 10, 1997 entry. At trial, appellant decided to testify and was questioned about the days immediately following the incident. On direct examination by his counsel, the following exchange took place:
 Q: It is my understanding, Christopher, that when they didn't look for the life saver and you didn't hear anything for a few days, you believed that the investigation was over, is that correct?
A: Yes, I was not aware I was being indicted.
 Q: And because of that you didn't have any further contact with law enforcement people or with lawyers and didn't realize the significance of preserving it?
* * *
 Q: Did you at that point, did you take any, did you realize you were going to be charged?
A: No, I did not.
 Q: In your mind this was over at least the medical wasn't over but in your mind the criminal investigation of it was over in your head at this point?
A: Right. Yes, I thought it was.
On cross-examination, the prosecutor impeached appellant's credibility by showing that he gave prior inconsistent statements at the suppression hearing. See Evid.R. 613. Specifically, appellant testified at the suppression hearing that he considered himself a suspect by Sunday afternoon, April 20, and that he had consulted with his personal attorney. The trial judge admonished the jury that "the answers to these questions are for the purposes of determining the credibility of this witness. They should not be used for any other purpose."
Appellant was convicted by the Brown County Court of Common Pleas of child endangerment in violation of R.C. 2919.22(B)(1) with a specification of serious physical harm. His sentence included paying restitution for Kelly's medical expenses. Subsequently, appellant filed a timely notice of appeal with this court and alleges two assignments of error.
In appellant's first assignment of error, he argues that the trial court improperly included restitution of Kelly's medical expenses in appellant's sentence. R.C. 2929.11(E)[1]
provides that "[t]he court * * * may require a person who is convicted of or pleads guilty to a felony to make restitution for all or part of the property damage that is caused by his offense * * *." However, this court has ruled that medical expenses are not "property damage" and restitution for medical expenses is not appropriate except as a condition of probation. State v. Bruce (1994), 95 Ohio App.3d 169, 173. The first assignment of error is sustained.
Appellant's second assignment of error states the trial court improperly allowed the prosecutor to impeach appellant at trial with statements from a suppression hearing. Specifically, appellant claims this error was in violation of rights under theFifth and Fourteenth Amendments of the United States Constitution and Section 10 and 16, Article I of the Ohio Constitution.[2]
The suppression hearing sub judice was to determine whether certain statements of appellant were gathered in violation of his rights against self-incrimination. See Miranda v. Arizona (1966),384 U.S. 436, 86 S.Ct. 1602. As a pure question of constitutional law, we review the decision of the trial court de novo. State v. Williams (1994), 94 Ohio App.3d 538, 543.
This assignment of error presents an issue of first impression in this jurisdiction. The United States Supreme Court has not ruled on the question. See State v. Salvucci (1980), 448 U.S. 83,93-94, 100 S.Ct. 2547, 2554. The Ohio Supreme Court has only mentioned the issue in the context of evaluating an ineffective assistance of counsel claim. State v. Campbell (1994), 69 Ohio St.3d 38,44-45 ("[E]ven though [defendant's suppression] hearing testimony was inadmissible in the state's case-in-chief, the court might have allowed its use to impeach [defendant] if he later chose to testify at trial," citing Salvucci,448 U.S. at 93-94, 100 S.Ct. at 2554). (Emphasis added.)
As background, we note that it is well-settled that statements obtained in violation of Miranda cannot be used at trial to establish the guilt of a defendant. Miranda, 384 U.S. at 479,88 S.Ct. at 1630. The prophylactic rules of Miranda, like theFourth Amendment exclusionary rule, are meant to deter law enforcement from violating the constitutional rights of a suspect. Id. at 467, 88 S.Ct. at 1624. As a corollary, when a defendant testifies at a pretrial suppression hearing, those statements cannot be used to prove the defendant's guilt. Simmons v. United States (1968), 390 U.S. 377, 88 S.Ct. 967. The reasoning is a defendant should not have to risk exercising his constitutional rights by testifying in a suppression hearing at the risk of incriminating himself. Id. at 394, 88 S.Ct. at 976.
A separate question is whether statements obtained in violation of a defendant's constitutional rights can be used solely to impeach the defendant. The established rule is, unless the statements were given involuntarily or under coercion, they are admissible to impeach a defendant who chooses to testify at trial. Michigan v. Harvey (1990), 494 U.S. 344, 110 S.Ct. 1176
(statements taken in violation of suspect Sixth Amendment right to counsel); Harris v. New York (1971), 401 U.S. 222,91 S.Ct. 643 (statements were obtained in violation of Miranda); Oregon v. Hass (1975), 420 U.S. 714, 95 S.Ct. 643 (same).
The Ohio Supreme Court has also concluded that the state can impeach a defendant at trial with voluntary statements given without first advising the defendant of his Miranda rights. State v. Hill (1996), 75 Ohio St.3d 195, 207-08. In Hill, the defendant was impeached with statements from "court-ordered interviews about his medical condition." Id. at 207. Those statements were taken without the defendant receiving Miranda warnings. However, the court reasoned that "[t]he shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent statements." Id., citing Harris, 401 U.S. at 226,91 S.Ct. at 646.
Although statements taken in violation of Miranda are generally available for impeachment purposes, it is axiomatic that "* * * use against a defendant of his involuntary statement is a denial of due process of law." Mincey v. Arizona (1978), 437 U.S. 385,398, 98 S.Ct. 2408, 2416. The United States Supreme Court has held that certain "gross abuses" constitute involuntary confessions. See, e.g., Brown v. Mississippi (1936),297 U.S. 278, 56 S.Ct. 461 (physical brutality); Townsend v. Sain (1963),372 U.S. 293, 83 S.Ct. 745 (use of truth serum). In Mincey, a detective questioned a suspect while in intensive care. Mincey,437 U.S. at 398, 98 S.Ct at 2416-17. The suspect was in pain and not entirely coherent. Id. at 398-99, 98 S.Ct. at 2417. Under those circumstances, the court concluded the statements of the suspect were involuntary. More recently, the court held that, when a defendant is granted use immunity to testify before a grand jury, that testimony "cannot constitutionally be used to impeach him when he is a defendant in a later criminal trial." New Jersey v. Portash (1979), 440 U.S. 450, 459-60,99 S.Ct. 1292, 1297. The court found such testimony inherently coercive because a defendant must testify or be found in contempt. Id. at 459, 99 S.Ct. at 1297.
Our analysis of these constitutional standards does not indicate the assignment of error to be well-taken. Appellant seeks to bootstrap the Simmons reasoning to impeachment cases or, alternatively, expand the due process standard for coercive or involuntary testimony. The first argument was implictly rejected in Harris when the Court stated that "[i]t does not follows from Miranda that evidence inadmissible against an accused in the prosecutor's case in chief is barred for all purposes * * *." Unlike Harris, the testimony utilized at trial was not even obtained in violation of Miranda or any other constitutional right of appellant. Accord People v. Douglas (1977), 66 Cal.App.3d 998,1005, 136 Cal.Rptr. 358, 363 (The court concluding that, unlike statements given in violation of Miranda, "there is nothing inherently unreliable about defendant's testimony given at a suppression hearing").
The due process argument also fails because appellant was not under any physical coercion or the legal obligation to testify. Cf. Portash, 440 U.S. at 459, 99 S.Ct. at 1297; Hill,75 Ohio St.3d at 207-08. Appellant, with the advice of counsel, chose to testify at the pretrial suppression hearing and "[h]aving voluntarily taken the stand, [appellant] was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process." Harris, 401 U.S. at 225, 91 S.Ct. at 645. Therefore, we agree with other jurisdictions which have held that impeachment of a defendant with sworn testimony from a suppression hearing is constitutionally permissible. Douglas,66 Cal.App.3d at 1005, 136 Cal.Rptr. at 363; Gray v. State (1979),43 Md. App. 238, 245, 403 A.2d 853, 858; People v. Sturgis (1974), 58 Ill.2d 211, 216, 317 N.E.2d 545, 548, certiorari denied (1975), 420 U.S. 936, 95 S.Ct. 1144. The second assignment of error is overruled.
Judgment affirmed in part, reversed in part, and remanded for resentencing based upon the disposition of the first assignment of error.
YOUNG, P.J., and POWELL, J., concur.
[1] Former R.C. 2929.11(E) has been repealed, but was in effect when appellant was sentenced.
[2] The Fifth Amendment of the United States Constitution provides, in part, that "[n]o person * * * shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law." The Fourteenth Amendment applies the same due process clause to the states. Section 10, Article I of the Ohio Constitution states, inter alia, that "[n]o person shall be compelled, in any criminal case to be a witness against himself." Section 16 provides that "[a]ll courts shall be open, and every person * * * shall have remedy, by due course of law * * *."