UNITED STATES of America, Plaintiff,

v.

ONE (1) PIPER AIRCRAFT VIN 27–2593, Defendant.

No. 80–2740–CIV–EPS.

United States District Court,
S. D. Florida,
Miami Division.

Aug. 25, 1981.

Joseph A. Florio, Asst. U. S. Atty., Miami, Fla., for plaintiff.

Steven M. Pave, Miami, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

SPELLMAN, District Judge.

The complaint in the case at bar alleges that the Defendant aircraft was used to transport marihuana in violation of 49 U.S.C. § 781 and that, by reason of such violation, the aircraft is subject to seizure and forfeiture under 49 U.S.C. § 782. The case was tried before the Court sitting without a jury.

Prior to the presentation of evidence, counsel for the claimant/owner stipulated that the only issue before the Court was the legality of the search which produced the marihuana. The claimant/owner made no attempt to prove a defense to the forfeiture action, save and except for his attempt to suppress the marihuana, and, therefore, this opinion will only address itself to the seizure at issue.

On the night of May 18, 1980, the subject aircraft was left in front of Carib Aviation at Tamiami Airport.[1] Hector Martinez, manager of Carib Aviation, found the plane parked in another customer's parking space when he arrived at work at 7:00 AM the following morning. Martinez testified that the plane was not tied down and that it was not neatly parked like the other planes in the area.

Although Mr. Martinez had not been notified in advance of the plane's arrival, he assumed that someone would contact him regarding the parking and/or fueling of the plane. No one ever called. Finally, seven to ten days after the subject vehicle first arrived at Carib Aviation, it was towed to another parking spot.[2]

When moving the aircraft to another parking spot, Mr. Martinez decided to attempt to determine who the owner of the airplane was. First, he contacted the Federal Aviation Agency Flight Service Station at Tamiami Airport to determine whether a flight plan was on record that would indicate the owner of the plane. When this proved unsuccessful, the plane was searched for ownership papers. After failing to locate any such papers in the passenger compartment, the luggage compartment was checked. Although no evidence of ownership was found in the baggage area, evidence of another sort was found therein. Inside the compartment was a small, portable vacuum cleaner which, when opened, was found to contain a substance resembling marihuana.

Sometime after the marihuana was discovered in the subject aircraft, Janes Johnston, a United States Customs Patrol Officer, called Mr. Martinez at Carib Aviation. Officer Johnston had been contacted by Flight Service, who told him that Carib Aviation was attempting to ascertain the owner of an aircraft that had apparently been abandoned on their ramp area. Mr. Martinez reported to Officer Johnston that, while searching for ownership papers, a substance resembling marihuana was discovered in the plane. Officer Johnston re-

---

1. Mr. Martinez testified that he left work at 9:00 PM on May 18, 1980. Since the gate at Tamiami Airport is closed at 11:45 PM, and there was no indication from the guard at said gate that the airplane's owner left after that time, Mr. Martinez appeared reasonably certain that the aircraft arrived sometime between 9:00 PM and 11:45 PM on the night of the 18th.

2. The Defendant aircraft was moved at this time because the customer who rented the parking space where the Defendant airplane was left, returned from out-of-town and needed a place to park.

ported this matter to Gene Francar, Special Agent with the United States Drug Enforcement Agency (DEA).

Officer Johnston, Agent Francar and another DEA agent, John Stevenson, went to Carib Aviation on May 27, 1980 to investigate this matter and to interview Mr. Martinez and Ricardo Morales, a mechanic who worked for Carib Aviation. The agents were met at Carib Aviation by Mr. Martinez and Mr. Morales who, prior to seeing their identification, thought that they were the owners of the Defendant airplane. Thereafter, Mr. Morales told the agents what had been found in the plane and, in response to their inquiry, he showed the agents the vacuum cleaner with the marihuana residue therein.

At that point, Agent Stevenson took the vacuum cleaner from Mr. Morales and emptied its contents into a piece of paper. Agent Stevenson then proceeded to vacuum the interior of the aircraft. This procedure yielded an additional amount of marihuana residue. Both samples taken from the vacuum cleaner were taken to the DEA Southeastern Regional Laboratory and confirmed to be marihuana, a controlled substance. The vacuum and samples were introduced into evidence, subject to the Court's ruling on Claimant's motion to suppress, as Government's Exhibit number 1.

The Claimant herein, Foreign Trade Operation, claims to be the owner of the subject aircraft, having purchased same on May 2, 1980. Foreign Trade desires the Court to suppress the marihuana found in the Defendant aircraft because the search which revealed the contraband allegedly violated Claimant's Fourth Amendment rights. It is the view of this Court, however, that Claimant has no standing to challenge the search at issue and, therefore, the motion to suppress is DENIED.

■ The Claimant herein has the burden of establishing that its own Fourth Amend-

ment rights were violated by the challenged search. *Rakas v. Illinois*, 439 U.S. 128, 131, n. 1, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Simmons v. United States*, 390 U.S. 377, 387–390, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Jones v. United States*, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). In this respect, Claimant has totally failed to carry its burden. Claimant's argument in support of suppression appears to be based solely on its rights as owner of the Defendant aircraft. Although a copy of the bill of sale was attached to the motion to suppress, said bill was never introduced into evidence during the trial of this cause.

■ Even if the Claimant had proved an ownership interest in the subject aircraft, it is the view of this Court that Claimant would still not have established standing to challenge the search. "While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights had been violated, *see Rakas, supra*, 439 U.S. at 144, n. 12, 99 S.Ct. at 431, property rights are neither the beginning nor the end of this Court's inquiry." *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619 (1980); *see also Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 2562, 65 L.Ed.2d 633 (1980). In the case at bar, all of the facts and circumstances surrounding the Defendant aircraft's arrival and tenure at Carib Aviation indicate that the plane had been abandoned. *See United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973). Clearly, under the facts of this case, the Claimant retained no reasonable expectation of privacy in the area searched and, therefore, it has no standing to challenge the search or seizure herein.[3] *Id.; Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

---

3. Even if the Claimant could establish standing, the evidence would not be suppressed because the Defendant airplane was searched by a private citizen who later made the fruits of his search available to the authorities. In this situation, there could be no illegal search within the meaning of the Fourth Amendment. *Barnes v. United States*, 373 F.2d 517 (5th Cir. 1967).