UNITED STATES of America

v.

Sekou ODINGA, a/k/a "Nathaniel Burns," a/k/a "Mgabasi," a/k/a "Mugubasi," a/k/a "Eddie Holmes," a/k/a "Lou," Cecil Ferguson, a/k/a "Mo," a/k/a "Chui," Edward Lawrence Joseph, a/k/a "Edward Lawrence," a/k/a "Jamal," a/k/a "Tony," a/k/a "J.R.," Silvia Baraldini, a/k/a "Louise," Defendants.

No. SSS 82 Cr. 0312 (KTD).

United States District Court,
S.D. New York.

Dec. 21, 1983.

See also, 576 F.Supp. 1038.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for the Government; Peter J. Romatowski, Robert S. Litt, Asst. U.S. Attys., New York City, of counsel.

Sekou Odinga, pro se.

Jesse Berman, New York City, for defendant Cecil Ferguson.

William Mogulescu, New York City, for defendant Edward Joseph.

Susan V. Tipograph, New York City, for defendant Silvia Baraldini.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

A motion was made in this matter before trial alleging that the prosecution had obtained evidence against the defendants in violation of the defendants' "due process" rights as guaranteed by the United States Constitution. I put off the "due process" hearing until after the trial with the expectation that many of the so-called issues originally raised would disappear when the evidence was received at trial. After their conviction the defendants were requested to set forth exactly what issues they believed were left for determination at such a hearing. Upon considering the submissions by the defendants Ferguson and Joseph and also that of Baraldini, I issued an order limiting the hearing to one issue. As stated in the order the sole issue to be considered at the hearing was: "whether Sam Brown's assertion of his Fifth Amendment privilege against self-incrimination at the suppression hearing and at trial were the result of government coercion."

In support of their position that Brown was coerced into pleading the Fifth Amendment, the defendants offered a tape recording of a telephone conversation between William Kunstler, Esq. and the potential witness Sam Brown. The government did not dispute that the voices recorded on the

tape were those of Kunstler and Brown. The context of the conversation, however, indicated that Brown had initiated the call even though Kunstler did not represent him; this type of behavior, apparently, is not necessarily unusual for Sam Brown. *See, e.g.,* Affirmation of Susan V. Tipograph dated March 30, 1982.

■ In the taped conversation Brown alleges that he asserted his Fifth Amendment privilege at the suppression hearing before trial because Assistant United States Attorney Robert Litt and F.B.I. Agent Cordier told him to "take the Fifth Amendment at the time I go to the federal courts." The government objected (and properly so) to the tape of the conversation on hearsay grounds but I permitted it in evidence as proof of the conversation—not as proof of the truth of anything asserted therein.

The first witness called by the defendants was Yvonne Thomas. Jesse Berman, Esq., defendant Ferguson's attorney, after questioning her on direct examination, represented her to be insane. Moreover, none of the questions asked of Ms. Thomas had anything to do with the issue of the hearing, *i.e.* whether the government had coerced "Sam Brown's assertion of his Fifth Amendment privilege ...." At the time of her testimony, I knew that Ms. Thomas was not "right" but I was unable to say whether that state was caused by intoxication, brain damage, substance abuse or psychiatric problems. The entire exercise seemed to be an opportunity for a lawyer to preen himself in front of a large audience by questioning an obviously disturbed and somewhat helpless woman. The entire testimony is considered stricken from the record.

The next witness called by the defense was Sam Brown. Since the Nyack/Brink's robbery and shootout, Sam Brown has been in custody having been charged with the robbery and three felony murders incident thereto. Apparently he has had a number of counsel, the last of whom is Robert Issecks, Esq. When Mr. Brown was called during the trial for a special voir dire to see if he would testify, Mr. Issecks was present. Brown at that time refused to be sworn, answering the oath with the statement, "my name is Samuel Brown and I invoke the Fifth Amendment." Transcript of the Trial at 7304. Mr. Issecks was Brown's counsel when the conversation between Brown and Kunstler apparently took place, and he also is the attorney who signed a section 1983 complaint against F.B.I. Agents Cordier and Maxwell, alleging that Cordier and Maxwell tortured Brown into making statements which among other things led to the issuance of the wiretap order in this case. The relief demanded in that complaint includes an injunction prohibiting the State of New York from prosecuting Brown for the robbery and murders.

Upon being called to testify at the due process hearing, Sam Brown once again refused to take the oath saying: "My name is Samuel Brown and I invoke the Fifth Amendment." Transcript of the Hearing at 31. I excused Mr. Brown and permitted the defense to consult with Mr. Issecks the attorney for Brown.

After the recess, Mr. Issecks failed to be candid with the court, asserting that he had "not been advised up till now as to what the issues are in this hearing." *Id.* at 37. This was corrected only when he was confronted and he admitted that the Assistant United States Attorney had during the prior week played the Brown-Kunstler tape to him and read to him the portion of my memorandum relevant to his client, Sam Brown. Transcript at 40. Issecks stated that he was willing to have his client testify about the allegations of his section 1983 complaint so that he could attempt to obtain an injunction but would not permit him to speak about anything else. I informed him that if Sam Brown chose to testify, he had to testify about everything including the events of the Nyack/Brink's robbery and the murders with which he was charged, the statements and admissions he made in connection therewith, whether he had been coerced into asserting his privilege, and all other relevant matters.

It is obvious that the testimony of an accused which is restricted to what he and his attorney want to say is totally worthless. If cross-examination is the test of truth and credibility then to restrict it in the manner suggested by Mr. Issecks is unconscionable. To my mind the arrogant demands of Issecks were an attempt to prostitute our system of justice into a game of semantics, and I would not permit it.

A suggestion was then made that Brown be permitted to testify as to his allegations that he was tortured and that all of the information contained in the wiretap applications could be assumed to be totally true and accurate, but Brown not be questioned thereon. In my mind this suggestion had the same defects as the first along with seriously bringing into question the standing of the defendants to continue the hearing. In effect, the defendants sought to assert that evidence should be suppressed not because their rights were violated but because some other person's rights were violated. I do not believe this to be the law.

Repeatedly during the proceeding the defendants and their counsel were warned that they would waive the entire issue by their continued outbursts or disrespect for our system of law. The calling of the witness Thomas was the first attempt to try the patience of the Court. With the arrival of Sam Brown and the intemperate speeches of his attorney things degenerated. The defendant Baraldini demanded to leave. The defendant Odinga was yelling out. Counsel for the other defendants refused to accept the rulings of the Court. Mr. Issecks wandered in and out of the courtroom, yelling things out, as if he were a spectator at an ice hockey game at Madison Square Garden. Even though the government had only just started to put in its case, at this point it was obvious that nothing could come out of any further proceedings. Therefore, I terminated the hearing.

■ The defendants' motion to dismiss the indictment is denied. First, the defend-

ants by their actions waived any issue which they might have presented. Indeed, there is a question in my mind as to whether the issue to be heard was raised in good faith. The defendants apparently did not believe that Brown would testify nor did they necessarily want him to do so. The defendants' motives in insisting on the hearing is relatively clear. Throughout the federal prison system the New York Metropolitan Correctional Center where the defendants are lodged is considered the Hilton of the system. For example, the defendants have telephoned my chambers several times either to complain about trivia or to seek information. Their friends and family are centered in this city. It is apparent to me that the defendants would use any ploy to delay their sentence and the day on which they will be transported to another institution.

Second, the defendants have not met their burden of coming forward with sufficient proof to even rule preliminarily in their favor. The Sam Brown-Kunstler tape was not in itself sufficient. Brown's credibility is highly suspect. His motives in offering to testify only to further his own ends is concrete evidence of the level of his credibility. By refusing to submit to full cross examination, Brown rendered his assertions on the tape totally worthless.

Third, the defendants in effect admitted that they were not basing their motion upon any allegation of deprivation of "due process rights" which were due to them. The motion, at least under one form revealed at the hearing is based on the alleged deprivation of the constitutional rights of Sam Brown in that assertedly Brown was tortured to give up the information upon which the "wiretap" and "bug" orders were based. It must be noted that in this form it is admitted that the information connecting the defendants with the crimes was accurate. Defendants, however, have not explained how they have standing to object to the alleged violation of Sam Brown's constitutional rights. *See Rakas v. United States*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

"[A]ttempts to vicariously assert violations of the Fourth Amendment rights of others have been repeatedly rejected by this Court." *United States v. Salvucci,* 448 U.S. 83, 86, 100 S.Ct. 2547, 2550, 65 L.Ed.2d 619 (1980). *See also United States v. Payner,* 447 U.S. 727, 731, 100 S.Ct. 2439, 3444, 65 L.Ed.2d 468 (1980). Lacking standing the defendants are not entitled to any relief.

For all of the foregoing reasons, defendants' motion is denied.

The defendants will be sentenced on February 15, 1984 as follows:

Sekou Odinga at 9:30 a.m.;

Silvia Baraldini at 10:30 a.m.;

Cecil Ferguson at 11:30 a.m.; and

Edward Joseph at 2:30 p.m.

SO ORDERED.