THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
MAX POLK *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—87—2285

Opinion filed January 26, 1990.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund and Linda Woloshin, Assistant State's Attorneys, of counsel), for the People.

Sheldon L. Banks, of Chicago, for appellees.

JUSTICE MURRAY delivered the opinion of the court:

The State appeals from the trial court's granting of defendants', Max Polk and Leola Hobson's, pretrial motion to suppress evidence after they had been charged with possession of a controlled substance (cocaine) with intent to deliver. The following facts are relevant to this appeal.

At the hearing on the motion, Polk testified that after defendants had paid cash for airplane tickets from Fort Lauderdale, Florida, to Chicago, they had to sit one seat apart from each other because of the crowded plane. Upon reaching Midway Airport, Hobson left the plane first and waited for Polk and then the two defendants walked to the terminal area together. Polk went to the luggage carousel area while Hobson went to make a phone call. Polk was carrying a folded-over suitbag and a white purse. After the phone call, Hobson left the suitbag on the floor by Polk while she went outside to see if their ride had arrived. Hobson returned to where Polk was standing, picked up the suitbag and went back outside.

After Polk retrieved his suitcase from the carousel, he joined Hobson outside the terminal doors. Defendants were then approached by a plainclothesman (Detective Richard Crowley) who showed them a badge. Without identifying himself, Crowley asked to see Polk's luggage and was refused. Crowley did not tell Polk that the officer could have dogs brought in to sniff the luggage or that a search warrant could be obtained if appropriate. Polk had his plane ticket in his hand (apparently for a luggage sticker), which Crowley grabbed. Crowley then took Hobson's ticket from her hand. The officer then searched Polk's suitcase without Polk's consent. Afterwards, Crowley grabbed Hobson's purse, which was slung over her shoulder. Polk grabbed its strap, and the two men struggled over the purse, causing the strap to break. Crowley retained the purse and Polk ran away. After a block and a half, Polk stopped and was arrested by a uniformed police officer (Al Murphy) assigned to airport duty. Polk also testified that neither the purse nor its contents belonged to him.

Hobson's testimony was substantially the same as Polk's but differed in the following respects. She testified that Polk, not she, held her airline ticket and that Crowley snatched both of them from him. Polk stated that Crowley took his suitcase from him and placed it on

the ground for the search; Hobson said that the case was on wheels and Polk never let go of its strap during Crowley's search. Hobson also said that Crowley left marks on her arm where he held her while struggling for her purse.

Detective Crowley's testimony is considerably different from that of the defendants. Crowley claimed that he and Detective Richard Boyle were watching the unboarding of defendants' flight as part of a routine drug surveillance at the airport. They had no information regarding any drug activity but were watching passengers arriving from drug source cities who might fall within an, apparently, amorphous drug courier profile.

Crowley saw Hobson get off among the first 10 passengers and she aroused no suspicions. Polk was one of the last few passengers to deplane and was carrying a folded-over suitbag. After the detective saw Polk look over his shoulder several times (the only passenger to do so) as he was walking alone, the officers decided to watch him. They noticed that as he walked past the security area for boarding passengers, he walked as far away as possible from the security personnel, hugging the wall. Polk made eye contact with Hobson, who was about 15 feet away in the terminal, and the defendants then nodded at each other. Polk went to the luggage carousel. Hobson went outside the terminal, then came back in and stood silently next to Polk, and then went back outside. Hobson came in again, talked to Polk and took the suitbag as she returned to the outside. She came into the terminal once again as Polk retrieved his suitcase whereupon they both left the terminal to stand on the sidewalk near a cab stand.

Both detectives then approached defendants, with Crowley identifying himself and asking them if he could speak with them, although they didn't have to speak. Detective Boyle left the area after this initial encounter. Crowley asked Polk for his name and identification and requested his flight ticket, which Polk gave to him. Crowley then asked Polk's consent to search his luggage and told him that he was free to go and was not under arrest. Polk then exclaimed that he was tired of being harassed every time he came into Midway and became very nervous and angry. The detective then told Polk that there was probable cause to detain his luggage and call the canine unit for a sniffer dog. Polk swore and threw his bag down, telling Crowley to go ahead and search it.

During the search, Crowley noticed Hobson walking away with the suitbag and asked Polk if she was carrying his suitbag. Polk said she was and gave his consent to a search of it. Polk called Hobson

back. She returned, placing the suitbag on the sidewalk and started to run back into the terminal. Crowley followed her to the entry doors, and when he reached her, she threw her purse over the detective's head into the street. Polk grabbed the purse and ran down the street until he ran into another passenger, Frank Zimmerman. A struggle ensued, causing the purse to drop and spill open. Three packages wrapped in duct tape fell out. Polk ran away but was caught about a block away by Officer Murphy. The State did not call Zimmerman to testify.

Officer Murphy testified that he saw Crowley search Polk's suitcase by himself, but that Polk pulled clothes out of the folded suitbag and threw them onto the sidewalk. Murphy also observed Hobson throw her purse over Crowley's head into the street.

Two police reports were made on the incident: a four-page case report for the Chicago police department (police report) and a five-page report for the Federal Drug Enforcement Agency (DEA report). Although Detective Crowley testified that he puts matters he considers to be important in his reports, the two reports were dissimilar in many respects. Many important facts were not put in the police report, which omissions were explained by Crowley on the basis that DEA reports were the more detailed reports. The police report did not mention that Polk stopped and looked around after deplaning; no gestures between defendants were mentioned nor were any of the airport meetings between defendants in the report. Both reports state that Hobson exited and reentered the airport twice; Crowley testified that it was three times. Much of the alleged initial conversations with defendants, e.g., questions regarding drug activity, requests for identification and flight tickets, was not in the police report. No mention of advising Polk of his rights regarding a search or Polk's angry response of throwing his clothes onto the sidewalk was made in the police report. The police report noted that when Hobson started to run, she threw her purse to Polk, who caught it and then ran into another passenger. A struggle over the purse ensued whereupon the purse's contents fell onto the ground. The DEA report states that as Hobson was running, she threw her purse into the street.

After oral arguments, the trial court sustained defendants' motion to suppress, stating that it did not believe the testimony of the State's witnesses. It found that, under these circumstances, the stop, search and seizure, and arrest were unconstitutional. The State now appeals, claiming that the motion should not have been granted because Polk had no standing to object to admission of the evidence

(purse's contents); the stop and questioning were agreed to by defendants; and the search was consensual. We must affirm the trial court for the following reasons.

■■ A defendant has standing to seek suppression of evidence only if his own fourth amendment rights have been violated. (*United States v. Salvucci* (1980), 448 U.S. 83, 65 L. Ed. 2d 619, 100 S. Ct. 2547.) In other words, one must have a proprietary or possessory interest in the item sought to be suppressed. (See *Rakas v. Illinois* (1978), 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421.) Thus, a defendant must demonstrate a subjective expectation of privacy in the searched place that society accepts as objectively reasonable in order to claim protection of the fourth amendment. *California v. Greenwood* (1988), 486 U.S. 35, 100 L. Ed. 2d 30, 108 S. Ct. 1625.

The State argues that because defendant Polk denied owning the purse or its contents and demonstrated no reasonable expectation of privacy in the purse, he had no standing to object to introduction into evidence of the drugs found in Hobson's purse. This argument is fallacious because it rests upon the premise that Hobson threw her purse into the street, after which it was picked up by Polk, who then ran away with it. It is clear from the record that the trial court did not believe this version of the events. Instead, the court emphasized its disbelief of the State's witnesses.

■■ ■ It is axiomatic that a reviewing court will not overturn a trial court's ruling on a motion to suppress unless it is manifestly erroneous. (*People v. Galvin* (1989), 127 Ill. 2d 153.) At a hearing on such a motion, the trial court's function is to determine the credibility of witnesses, the weight to be assigned to their testimony, and the inferences to be drawn from the evidence. (*People v. Akis* (1976), 63 Ill. 2d 296.) Based on this record, we cannot overturn the trial court's determination on some theory that the court was erroneous in believing the defendants' testimony. Even in print, the testimony of the State's witnesses, coupled with the inadequate and sometimes-conflicting police and DEA reports, is incredible.

If one believes the defendants' testimony that Crowley and Polk struggled over Hobson's purse, as obviously did the trial court, then Polk had standing to object to introduction of the purse's contents. He had a possessory interest in the personal luggage of his companion when he went to her aid in an attempt to keep Crowley from grabbing her purse off of her shoulder. It was in Polk's possession when Crowley seized it. Property ownership may be a factor in determining whether a party has standing to test the constitutionality of a search and seizure, but it is not dispositive. Other relevant fac-

tors include a reasonable expectation of privacy, whether a defendant was legitimately present in the area searched, defendant's possessory interest in the area or property seized, his ability to control or exclude others' use of the property, and a subjective expectation of privacy in the property. (*People v. Johnson* (1986), 114 Ill. 2d 170.) Although Polk disclaimed ownership of the purse, the evidence indicated that he had possession of, and a reasonable right to exclude others from, seizure of his companion's property. Therefore, Polk had standing to assert suppression of the purse's contents.

■ The State's other contentions must fail also on the basis of the trial court's credibility assessments. Once again, the State assumes we must overturn these assessments and believe Crowley's testimony. The trial court found no probable cause for an investigatory stop and the subsequent seizure of defendants. To make an initial stop, there must be an articulable suspicion, based on objective facts, that a defendant is involved in criminal activity. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) However, a consensual inquiry is permissible if it does not escalate into a detention amounting to a seizure in violation of a constitutionally protected interest. *Florida v. Royer* (1983), 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319.

■ Based on these principles, our appellate court has condoned police intrusion at airports upon persons deplaning from flights originating in Florida "drug source cities" who make eye contact with and nod affirmatively to other passengers. (*People v. Forrest* (1988), 172 Ill. App. 3d 385.) It has done so, however, where the evidence indicated passenger consent to the initial intrusion. Consent to a search is a question of fact to be determined from the totality of all the circumstances. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041.) In the present case, the trial court did not believe that the appropriate eye contact or affirmative nod occurred, or that defendants gave consent to either the initial questioning or subsequent searches. We can find nothing in the record to disturb such a determination.

Once again, the credibility determinations are crucial to the outcome of this case. The trial court made a succinct summation while commenting on the testimony of the State's witnesses: "I don't believe that is what occurred, I think there were no articulable facts taken from the activities of the defendant, there would be no rational inferences drawn therefrom that would reasonably warrant the intrusion and investigatory stop." The record does not indicate that these assessments were manifestly erroneous but, rather, supports the trial

court's conclusion. Accordingly, because there was no warrant, no probable cause or exigent circumstances, no consent to an investigatory stop or search, the granting of defendants' motion to suppress must be affirmed.

Affirmed.

COCCIA, P.J., and LORENZ, J., concur.