916 F.2d 713
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Debbie FREDERICKSON, Defendant-Appellant.
 No. 90-5536.
 United States Court of Appeals, Sixth Circuit.
 Oct. 22, 1990.
 
 Before NATHANIEL R. JONES and WELLFORD, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This appeal arises from a guilty plea entered by Debbie Frederickson, appellant. She asserts that she has standing to object to an alleged illegal search by the Tennessee Highway Patrol on May 3, 1989, of a van she was occupying. Appellant was an apparent passenger in a Ryder rental van when the Highway Patrol officers stopped the van. Kenneth Williams, not a codefendant, had rented the van in question; he was not in the van at the time of the stop. As a result of a search of the van, the officers found more than five kilograms of cocaine. The district court found that Frederickson did not have standing to assert a fourth amendment violation as to search of the van apart from the suitcases. We affirm this holding.
 
 
 2
 Appellant asserted at the hearing on her motion to suppress that she has standing to object to an alleged illegal search and seizure of two suitcases found in the van despite her failure to assert a possessory interest in the suitcases at the time of the search. The district court did not rule specifically on the standing issue, because it found that the search and seizure of the suitcases were incident to a lawful arrest and that there was probable cause to believe there was contraband in the suitcases. We affirm this conclusion by the district court as well.
 
 
 3
 Austin, the arresting officer in this case, clocked the van in question at more than eighty miles per hour on Interstate 40 in Dickson County, Tennessee,[1] and Frederickson, who was in the passenger's seat, told Austin that she had not been driving the van. Frederickson testified at the hearing, however, that she and Brown had switched seats when they saw the police car lights.
 
 
 4
 As Austin walked around to the driver's side of the van he had stopped, he shined his flashlight into the van and asked Brown for her license. Brown gave him a Nevada license. When asked for her identification, Frederickson told Austin that she had none. Both were placed in the patrol car.
 
 
 5
 Trooper Medina then arrived at the scene. A status check on Brown's driver's license was requested. While awaiting this information, the officers asked who had rented the van. Frederickson responded that Williams, now in Mississippi, had rented the van.[2] Frederickson later testified at the hearing that she had rented and paid for the van in cash, although she neither picked it up nor placed the rental in her name.[3] When asked if they had any illegal drugs, weapons, or paraphernalia in the van, appellant and Brown answered in the negative, but they refused a request to search the van.
 
 
 6
 The requested computer information indicated that Brown's license had been suspended for a traffic violation. Austin then arrested her for driving with a suspended license, and he told Frederickson that she would not be permitted to drive the van because she had no license or identification. He assured her that he would take her to a "safe place." He also explained that the van would be towed and officers would do an inventory on its contents.
 
 
 7
 In the process of obtaining the identification number from the van, Trooper Medina smelled the odor of marijuana in the van. Austin testified that he and Medina then began the inventory on the van contents.
 
 
 8
 Austin testified that they saw two blue suitcases and that one felt like "five pounds of sugar ... just lumpy." Medina testified that the other suitcase was open and that he saw "some wrapped up bags in plastic and tape"; they were visible and, in his opinion, the packages contained contraband. Austin testified that he saw Medina holding the suitcase with his "left hand on one part of the bag and his right hand on the other, and he just kind of pulled," and the bag fell open exposing three kilograms of suspected cocaine.
 
 
 9
 The suspected substance was field tested and indicated positive as cocaine. The officers called a supervisor at the Tennessee Highway Patrol[4] before proceeding further. Austin asked Frederickson and Brown which one claimed the suitcases. Neither responded. The closed suitcase was then opened and it also contained cocaine.
 
 
 10
 Frederickson and Brown were indicted on two counts--conspiracy to distribute cocaine and possession of cocaine in excess of five kilograms. Frederickson filed a motion to suppress evidence. The motion was denied. Frederickson later filed a supplemental motion to suppress evidence. The district court held a hearing, again denying the requested suppression of cocaine. After then pleading guilty, Frederickson reserved the right to appeal on the suppression issue only.
 
 
 11
 A defendant has the burden of establishing standing to assert a fourth amendment violation. United States v. Salvucci, 448 U.S. 83, 86 (1980). The defendant most prove that he or she has a legitimate expectation of privacy in the place searched or in the things searched. Rakas v. Illinois, 439 U.S. 128 (1978). In Rakas, 439 U.S. at 128, the Court held that defendants who were passengers in a car that they did not own or lease did not have a legitimate expectation of privacy in the car. The Court stated, "the fact that they were in the car with permission of its owner is not determinative of whether they had a legitimate expectation of privacy in the particular areas of the automobile searched." Id. at 148.
 
 
 12
 In United States v. Pino, 855 F.2d 357 (6th Cir.1988), cert. denied sub nom. Llera v. United States, 110 S.Ct. 1160 (1990), this court held that a passenger in a rental car lacked standing to object to the search of the car. In rejecting the claim of standing, this court relied upon the facts that the defendant did not pay to rent the car and that he was not listed as an authorized driver of the vehicle. Id. at 360. Furthermore, this court found relevant that the defendant did not have a valid driver's license. Id.
 
 
 13
 Frederickson has failed to establish a legitimate expectation of privacy in the van. She was either a passenger (according to Austin's testimony) or an unauthorized driver (according to her hearing testimony and the terms of the rental agreement), who did not have a license on her person, when the van was stopped. Williams was the only authorized driver of the van; he rented the van and only his name appears on the rental agreement.
 
 
 14
 Even assuming that Frederickson paid to rent the van, she still does not have standing. Her name was not on the rental agreement (a fact that the court found relevant in Pino ) and she did not have a driver's license on her person (also a fact that this court found relevant in Pino.) The district court's factual finding that appellant had no expectation of privacy in the van was not clearly erroneous. United States v. Coleman, 628 F.2d 961, 963 (6th Cir.1980); United States v. Ross, 415 F.2d 742 (6th Cir.), cert. denied, 396 U.S. 971 (1969).
 
 
 15
 Frederickson neither confirmed nor denied whether the suitcases belonged to her. She did not make "a clear disavowal of any possessory or property interest" in the suitcases. Pino, 855 F.2d at 360. She was silent as to the ownership of the suitcases. She did assert an interest in the suitcases at the suppression hearing. While it is a doubtful proposition, we will assume that Frederickson has standing to object to the search of the suitcases.
 
 
 16
 When a person is lawfully arrested, the police may search the arrestee's person and the area within his or her immediate control. Chimel v. California, 395 U.S. 752 (1969). In New York v. Belton, 453 U.S. 454, 460 (1980), the Supreme Court held that when a police officer makes a lawful arrest of an occupant of an automobile, he or she may "as a contemporaneous incident of that arrest, search the passenger compartment of that automobile" including "the contents of any containers found within the passenger compartment."
 
 
 17
 Brown was arrested for driving with a suspended license. Clearly, the police officers in this case could search parts of the van as incident to that lawful arrest. Austin testified that the area in which the suitcases were found was easily accessible to the driver of the vehicle, as well as the passenger, by the use of a sliding door that separated the front seats from the back. The district court credited this testimony, rather than appellant's inconsistent statements. The finding that the compartment in which the suitcases were found was within the control of both Brown and Frederickson is not clearly erroneous.
 
 
 18
 Appellant asserts that the search was not incident to a lawful arrest because Brown was under arrest but that appellant was not. She maintains that because she was not the arrestee, Belton is not applicable. In Belton, however, the Court did not limit its holding to circumstances under which all of the passengers of an automobile are arrested. Police officers may search the parts of an automobile and its contents that are within the control of an occupant of the vehicle that was arrested. Belton, 453 U.S. at 460.
 
 
 19
 We find that the search of the suitcases, under all the circumstances, was not unconstitutional and was supported by probable cause. We accordingly AFFIRM.
 
 
 
 [1]
 The wires to the governor box of the rented van had been disconnected
 
 
 [2]
 Williams had rented the van in Las Vegas, Nevada. Daniel Barnum, the owner of the rental agency, testified that he had asked Williams if any other person would be driving the van, and Williams responded negatively
 
 
 [3]
 Frederickson, on cross examination, conceded that the agreement states that only the person named in the agreement should drive the van. She also conceded that the rental agreement stated the van was not to be used for carrying contraband
 
 
 [4]
 The supervisor would advise whether to search the unopened suitcase