# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
April 3, 2001 Session

## STATE OF TENNESSEE v. PETER ALLEN ROSS

**Appeal from the Court of Criminal Appeals**
**Circuit Court for Hardin County**
**No. 7757     Charles C. McGinley, Judge**

---

**No. W1999-00972-SC-R11-CD - Filed July 9, 2001**

---

ADOLPHO A. BIRCH, JR., J., dissenting.

For denying that a key to a hotel room belonged to him, the defendant has been stripped of his Fourth Amendment right to be free from unreasonable searches and seizures. The majority imposes this harsh result even in the face of obvious and undisputed evidence that the subject premises were under the defendant's exclusive and private control. Because I am unable to agree that a refusal to incriminate one's self in response to police inquiries should result in a loss of Fourth Amendment rights, I respectfully dissent.

In my view, citizens should not be forced to choose between incriminating themselves or sacrificing their right to insist that the police obtain a warrant before intruding upon their property.[1] See 5 Wayne R. LaFave, Search and Seizure, § 11.3(e) at 187 (3d ed. 1996) ("Given the fact that one does not otherwise have to incriminate himself to preserve his Fourth Amendment rights, it is difficult to understand how a refusal to make incriminating admissions in response to police interrogation can be held to deprive a person of Fourth Amendment standing.").

Proper analysis of Fourth Amendment privacy interests, I submit, should give considerably more weight to the accused's actual proprietary interest in the object of a search or seizure. As noted by the majority, Fourth Amendment analysis turns upon whether the defendant has a "legitimate expectation of privacy" in the searched premises. See Rakas v. Illinois, 439 U.S. 128, 142, 99 S. Ct. 421, 429, 58 L. Ed. 2d 387 (1978). Under traditional Fourth Amendment jurisprudence, a right of control over the premises always has been a pivotal element in determining whether the defendant has a cognizable privacy interest in the premises. To help determine when a defendant has such a right of control, the United States Supreme Court has on occasion looked to concepts of property law for guidance. As stated in Rakas:

---

[1]The majority asserts that Ross was never forced to choose whether to incriminate himself. Given, however, the State's reliance upon Ross's occupation of the room as evidence of his possession of the contraband seized therein, any admission he might have made almost certainly would have been used against him.

Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. One of the main rights attaching to property is the right to exclude others, and <u>one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude</u>. Expectations of privacy protected by the Fourth Amendment, of course, need not be based on a common-law interest in real or personal property, or on the invasion of such an interest. . . . But by focusing on legitimate expectations of privacy in Fourth Amendment jurisprudence, the Court has not altogether abandoned use of property concepts in determining the presence or absence of the privacy interests protected by that Amendment.

<u>Id.</u> at 143 n.12, 99 S. Ct. 430 n.12 (citations omitted, emphasis added).

Despite the majority's statement that "the concept of abandonment in Fourth Amendment jurisprudence is unlike that found in property law concepts,"[2] treatment of the concept is indeed related to property law. Abandonment of property results in a loss of the possession or control which gives rise to the "right to exclude" emphasized in <u>Rakas</u>. <u>Cf.</u> LaFave, <u>supra</u>, § 11.3(a) at 128 ("Abandonment must be distinguished from a mere disclaimer of a property interest made to the police prior to the search, which under the better view does not defeat standing."). The distinction between a disclaimer and an abandonment of proprietary interest was elucidated by the United States Court of Appeals for the Seventh Circuit in <u>United States v. Brown</u>, 64 F.3d 1083 (7th Cir. 1995). In that case, similar to the one at bar, police conducted a warrantless search of the defendant's apartment after he had indicated that the apartment did not belong to him. <u>Id.</u> at 1084-85. The search produced a large amount of contraband. <u>Id.</u> The Court of Appeals, in rejecting the Government's contention that his disclaimer defeated his legitimate expectation of privacy in the premises, explained:

Let us assume that [the defendant] lied to the agents about his habitation. That does not affect the fact that he <u>did</u> live in [the apartment in question]. Everyone has a legitimate expectation of privacy in his residence. Ours is not like the case of a courier who disclaims an interest in a drug-filled suitcase, or a suspect who throws drugs on the street and flees. People are free to expose their belongings to the public, or to throw them away; seizing abandoned suitcases from baggage carousels does not invade anyone's privacy interest. The privacy interest in a dwelling is not so easily

---

[2]Majority op. at ___.

> extinguished, and a misleading response to an officer's question is a far cry from a consent to search.

Id. at 1085; see also S. Michael McColloch, Criminal Procedure: Arrest, Search and Confessions, 42 Sw. L.J. 565, 574 (1988) (concluding, based on Chapa v. State,[3] that "a defendant who disclaims ownership and possession of a particular place or thing, but who can nevertheless demonstrate some legal, reasonable, or customary right to control the property or exclude others therefrom, will retain his standing to challenge a search of the property in question"). The principle explained in Brown applies with even greater force to the case under submission.

The majority concludes that a disclaimer of an ownership interest is sufficient to defeat the defendant's subjective expectation of privacy in the premises. See generally Katz v. United States, 389 U.S. 347, 362, 88 S. Ct. 507, 516, 19 L. Ed. 2d 576 (1967) (holding that the question whether a defendant's expectation of privacy is legitimate has two components: (1) whether the defendant had a subjective expectation of privacy; and (2) whether that expectation is "one that society is prepared to recognize as 'reasonable.'"). This conclusion, however, fails to sufficiently take into account that the defendant's actual possessory interest is unaffected by such a denial. Only such acts as true abandonment (a voluntary relinquishment of the proprietary interest) or consent (a voluntary choice not to rely on one's right to exclude) should be held to defeat a citizen's privacy interest in his or her property. A mere unsworn denial of ownership in the face of police questioning should amount to neither.

The illogic of equating denial of ownership with actual abandonment is demonstrated by the State's inconsistent positions in this case: (1) at the suppression hearing, the State asserted that Ross had disclaimed his privacy interest in the hotel room; (2) at trial, the State offered evidence of Ross's control over the hotel room as the linchpin evidence that he owned the drugs which police had recovered there; and (3) on appeal, the State reverts to its initial contention that Ross's denial defeated his privacy interest. In United States v. Morales, a case quite similar factually to the one at bar, the United States Court of Appeals for the Eighth Circuit castigated the government for espousing "inconsistent positions" at trial and on appeal. The court stated:

> [T]he government should not be permitted to use at the suppression hearing appellant's alleged disclaimer to support a warrantless entry, then argue at trial that appellant's possession of the [hotel room] key supported constructive possession of the cocaine, and now on appeal argue that the disclaimer constituted abandonment to defeat an expectation of privacy.

737 F.2d 761, 763-64 (8th Cir. 1984); see also Steagald v. United States, 451 U.S. 204, 209, 101 S. Ct. 1642, 1646, 68 L. Ed. 2d 38 (1981) ("The Government . . . may lose its right to raise factual issues of this sort . . . when it has made contrary assertions in the courts below . . . ."); United States

---

[3]729 S.W.2d 723, 727-29 (Tex. Crim. App. 1987).

v. Issacs, 708 F.2d 1365, 1368 (9th Cir. 1983) ("[The defendant's] denial of ownership should not defeat his legitimate expectation of privacy in the space invaded and thus his right to contest the lawfulness of the search when the government at trial calls upon the jury to reject that denial.").[4]

Certainly, it is conceivable that a disclaimer of possessory interest might under certain circumstances rise to the level of an abandonment. See United States v. Veatch, 674 F.2d 1217, 1221 (9th Cir. 1981) (discussing cases holding that a disclaimer of interest in property may constitute abandonment). But rather than holding that a disclaimer of interest in the premises to be searched defeats per se the defendant's legitimate expectation of privacy in the premises, I would rely on the elements set forth in United States v. Haydel,[5] which has been cited favorably by this state's Court of Criminal Appeals,[6] to guide the analysis of whether the defendant's expectation of privacy should be treated as legitimate. As noted by the majority, the Haydel court suggested that the question of the defendant's expectation of privacy in the premises should be analyzed in terms of whether the defendant: (1) had an ownership interest in the property; (2) had "the right to exclude others from that place"; (3) "exhibited a subjective expectation that it would remain free from governmental invasion"; (4) "took normal precautions to maintain [his or her] privacy"; and (5) "was legitimately on the premises." Id. at 1154-55.

Of these factors, number (4) may weigh against Ross, for his denial of a possessory interest in the hotel room undermined his efforts to maintain his privacy. The other applicable factors, however, weigh in his favor despite his denial, for that denial does not change the fact that he was

---

[4]The majority, citing United States v. Salvucci, suggests that "the dissent's view has been rejected by the United States Supreme Court for more than two decades." Majority op. at ___ (citing 448 U.S. 83, 88-89, 100 S. Ct. 2547, 2551-52, 65 L. Ed. 2d 619 (1980)). This contention, however, reads too much into the Salvucci Court's holding. Salvucci rejected the principle of "automatic standing," under which defendants charged with possessory crimes were entitled to challenge the legality of a search "without regard to whether they had an expectation of privacy in the premises searched." 448 U.S. at 85, 100 S. Ct. at 2549 (overruling Jones v. United States, 362 U.S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960)). This holding takes nothing away from my assertion that a mere denial of possessory interest is, unlike actual abandonment or consent, insufficient to defeat a legitimate expectation of privacy in the premises.

To the extent that the majority pummels my assertion that it is illogical for the State to take inconsistent positions regarding whether the defendant abandoned his interest in the premises, Salvucci likewise presents inadequate support. The Salvucci Court held that "the vice of prosecutorial self-contradiction" was not implicated by the State's claim that Fourth Amendment standing was not conferred by a possessory interest in a seized item. Id. at 88-89, 100 S. Ct. at 2551. The Court stated, "We simply decline to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched." Id. at 88-89, 100 S. Ct. at 2551. Thus, the Court drew a distinction between a privacy interest in the item seized, which the Court held not to be valid, and a privacy interest in the premises searched. See id. at 92, 100 S. Ct. at 2553. But while the State certainly may argue under Salvucci that the defendant owned the seized contraband but did not have a privacy interest in the premises, this by no means changes the fact that it is inconsistent for the State to argue both in favor and against a possessory interest (and a concomitant privacy interest) in the premises searched.

[5]649 F.2d 1152 (5th Cir. 1981). The majority opinion discusses these elements at ___.

[6]See, e.g., State v. Turnbill, 640 S.W.2d 40, 46 (Tenn. Crim. App. 1982).

legitimately on the premises, had the right to exclude others, and presumably expected that the hotel room would remain free from intrusion by the State. Though Ross denied to police that the room was his, the record otherwise reflects no indication that he did anything to expose the contents of the room to the world. The door was closed and locked, Ross kept the curtains drawn to cover the windows, the activities inside the room were hidden from public view, and–contrary to the majority's assertion–he did not "voluntarily relinquish the key" to the room, but instead kept it concealed on his person until the police demanded that he surrender it. These factors compel the conclusion that Ross had a subjective expectation of privacy in the hotel room sufficient to create a legitimate expectation of privacy. Under these circumstances, the warrantless, non-consensual search of the hotel room violated Ross's Fourth Amendment rights.

Having decided that Ross had a possessory interest in the hotel room and that a consideration of the Haydel factors legitimizes this interest, I would hold that Ross indeed had a legitimate expectation of privacy in the hotel room. Ross had a full suppression hearing–consequently, I would hold that the evidence discovered by officers during the search of the hotel room should be suppressed. Accordingly, I dissent.

_____
ADOLPHO A. BIRCH, JR., JUSTICE