NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1826
_____

UNITED STATES OF AMERICA

v.

SHAUN D. PETTIWAY, Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. Action No. 2-08-cr-00129-001)
District Judge: Honorable Mary A. McLaughlin
_____

Submitted Under Third Circuit LAR 34.1(a)
April 28, 2011
_____

Before: SLOVITER, GREENAWAY, JR., and ROTH, Circuit Judges

(Opinion Filed: May 27, 2011)

_____

OPINION
_____

GREENAWAY, JR., Circuit Judge

Shaun Pettiway ("Pettiway") appeals from the District Court's March 15, 2010,

Order denying his motion to suppress an envelope and a passport contained therein,

1

obtained from his ex-girlfriend's house, while police were executing an arrest warrant. Pettiway contends that the District Court erred in denying his motion and admitting this evidence at trial. We disagree. For the following reasons, we will affirm the District Court's judgment of conviction.

## I. <u>BACKGROUND</u>

On June 5, 2006, the Pitman, New Jersey Police Department obtained a warrant for Pettiway's arrest in connection with an alleged armed bank robbery. The Pitman Police Department requested assistance from the United States Marshals Service, which obtained a fugitive warrant for Pettiway's arrest.

In an attempt to locate Pettiway, Inspector William Degan ("Degan") of the U.S. Marshals Service contacted the State Department on July 3, 2006, to ascertain whether Pettiway had been issued a U.S. Passport. This inquiry revealed that a passport had been issued to "Shaheim Leebon Pettiway," the defendant's brother, a few days earlier. Inspector Degan compared the photograph on this passport with driver's license photographs of Pettiway and his brother. He determined that the photograph on the passport application was not that of Shaheim, but rather of Shaun Pettiway. Inspector Degan, together with State Department Special Agent Zuchman, concluded that Pettiway had obtained a passport using his own photograph and his brother's biographical information.

On July 7, 2006, members of the U.S. Marshals Fugitive Task Force, led by Inspector Degan, conducted a briefing in preparation for an attempt to apprehend

2

Pettiway at the home of Latifah Muhammad ("Muhammad"), who was allegedly Pettiway's girlfriend. At this briefing, Inspector Degan informed the officers that Pettiway had obtained a fraudulent passport.

Later that morning, the Task Force members arrived at Muhammad's home, knocked at the door, and identified themselves as police officers. Muhammad stated that she knew Pettiway, but that he was not in the house. Detective Barry Johnson asked if the Task Force members could enter the home to conduct a search. Muhammad consented. The officers entered and searched the home. Although Pettiway was not found inside Muhammad's home, Detective Sergeant Christopher Leone ("Leone") noticed an unsealed envelope lying on top of a dresser in a second-floor bedroom. The envelope was addressed to "Shaheim Leebon Pettiway" at an address in Philadelphia and bore the return address of the "U.S. Government." Based on the briefing that morning regarding Pettiway having obtained a fraudulent passport, Detective Leone brought the envelope to Inspector Degan. Upon examination, Inspector Degan felt an object in the envelope that he believed to be the same size as a passport. Inside the envelope, he found a U.S. Passport issued to "Shaheim Leebon Pettiway," Pettiway's brother, bearing Pettiway's photograph.

Muhammad stated to the Marshals, and the District Court later found, that she had been in a casual romantic relationship with Pettiway since April, 2006, but that the relationship ended in July, 2006, a few days prior to the search. During their relationship, Pettiway would spend the night at Muhammad's house once or twice a week and would

3

occasionally leave small items behind.  Pettiway did not have a key to the house and was not allowed to enter the house as he pleased.  His name does not appear on the title to the house and he never helped pay for any of the maintenance.  Pettiway did not receive any mail at the house.

Following their breakup on July 4, 2006, Pettiway appeared at Muhammad's residence with a bag in his hand.  Without asking permission, and without Muhammad's authorization, Pettiway entered the house.  Muhammad went in after him, reminded him that the relationship had ended, and asked Pettiway to leave.  Pettiway complied, but Muhammad later noticed that he had left the bag behind in the house, as well as an envelope that he had left on the dresser in the house.  Muhammad did not give Pettiway permission to leave these items in the house.

On March 6, 2008, Pettiway was indicted in the Eastern District of Pennsylvania. He was charged with making false statements in a United States passport application and aggravated identity theft, in violation of 18 U.S.C. § 1542 and 18 U.S.C. § 1028A. Pettiway entered a plea of "not guilty" to both counts and on May 13, 2009, filed a motion to suppress the envelope and passport recovered from Muhammad's residence. [1]

On September 3, 2009, the District Court denied Pettiway's motion to supress, holding that even if Pettiway had a reasonable expectation of privacy in the envelope left at Muhammad's home, the search was legitimate under the "plain view" exception to the

4

Fourth Amendment. On December 4, 2009, a jury convicted Pettiway on both counts and the District Court sentenced him to 51 months of imprisonment.

Pettiway appeals his judgment of conviction.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction, pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

We review the District Court's denial of Pettiway's motion to suppress "for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the district court's properly found facts." United States v. Coles, 437 F.3d 361, 365 (3d Cir. 2006) (citing United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003)).

## III. ANALYSIS

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. CONST. amend. IV. In order to avail himself of the protections afforded by the Fourth Amendment, Pettiway must demonstrate "that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable . . . ." Minnesota v. Carter, 525 U.S. 83, 88 (1998); see also Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978) ("The proponent of a motion to suppress has the burden of establishing that his own

---

[1] At trial, Pettiway also moved to suppress evidence obtained from Muhammad's car. Pettiway does not contest the District Court's denial of that suppression ruling on this appeal.

Fourth Amendment rights were violated by the challenged search or seizure.").[2] The

"capacity to claim the protection of the Fourth Amendment depends not upon a property

right in the invaded place but upon whether the person who claims the protection of the

Amendment has a legitimate expectation of privacy in the invaded place." Rakas, 439

U.S. at 143 (citation omitted). We therefore must first consider whether Pettiway

"manifested a subjective expectation of privacy in the object of the challenged search"

and whether "society is willing to recognize that expectation as reasonable." California v.

Ciraolo, 476 U.S. 207, 211 (1986); see also Reedy v. Evanson, 615 F.3d 197, 228 (3d

Cir. 2010).

The protections of the Fourth Amendment extend not only to people in "their"

houses, but also "in some circumstances . . . in the house of someone else." Carter, 525

U.S. at 89 (citation omitted). In Minnesota v. Olson, 495 U.S. 91 (1990), the Supreme

Court held that an overnight guest in the house of another has a legitimate expectation of

privacy for as long as they are in the home. The Court reasoned that "[s]taying overnight

in another's home is a longstanding social custom that serves functions recognized as

valuable by society . . . [and] [f]rom the overnight guest's perspective, he seeks shelter in

another's home precisely because it provides him with privacy . . . ." Id. at 98-99. An

overnight guest satisfies the two-part inquiry announced in Ciraolo, but fails when the

---

[2] Although the government characterizes this issue as one of standing, we note that "in determining whether a defendant is able to show the violation of his (and not someone else's) Fourth Amendment rights, the 'definition of those rights is more properly placed

6

overnight guest departs the home, or where "one [] is merely present with the consent of the householder . . . ." Carter, 525 U.S. at 90. Accordingly, "[i]t is settled law that . . . [s]hort-term guests . . . have no expectation of privacy in the house . . . ." United States v. Mosley, 454 F.3d 249, 259 (3d Cir. 2006).

Here, Pettiway entered Muhammad's home on July 6, 2006, without her consent and with the knowledge that their relationship had ended two days prior. He had no legal entitlement to the home and did not share in the expenses for its upkeep. Pettiway was not even an invited guest, much less an overnight guest, and, in fact, Muhammad asked him to leave. We find these facts too far afield from "the overnight guest relationship in Olson to suggest a degree of acceptance into the household." Carter, 525 U.S. at 90 (footnote omitted). Accordingly, we agree with the District Court that Pettiway had no expectation of privacy in Muhammad's home at the time of the search. [3]

We must next determine whether Pettiway had a reasonable expectation of privacy in the sealed envelope itself. We believe that Pettiway failed to demonstrate a legitimate expectation of privacy in the envelope. [4]

---

within the purview of substantive Fourth Amendment law than within that of standing.'" Carter, 525 U.S. at 88 (quoting Rakas, 439 U.S. at 140).

[3] The mere fact that Pettiway was in a relationship with Muhammad does not automatically give him a reasonable expectation of privacy in her house. At the time of the search, their relationship had terminated and Pettiway was not living in her house. Cf. United States v. Paradis, 351 F.3d 21, 27 (1st Cir. 2003) (holding that defendant had a reasonable expectation of privacy in his girlfriend's house because he lived there and stored possessions there at the time of the search).

[4] The District Court assumed that Pettiway did have a reasonable expectation of privacy in the envelope and proceeded to consider the government's arguments under the "plain

Possessory interest in an item recovered during the search of another's property is a factor, but not determinative, in finding a legitimate privacy expectation. See United States v. Salvucci, 448 U.S. 83, 90-92 (1980). We note at the outset, that the envelope, albeit opened, was addressed to Pettiway's brother, Shaheim Leebon Pettiway. We do not believe that Pettiway had any reasonable expectation of privacy in the envelope, which was not intended for his receipt.[5] See United States v. Pierce, 959 F.2d 1297, 1303 (5th Cir.) ("a defendant who is neither the sender nor the addressee of a package has no privacy interest in it") (citation omitted), cert. denied, 506 U.S. 1007 (1992).

In light of our conclusion that Pettiway has not demonstrated a reasonable expectation of privacy in either Muhammad's home or in the envelope itself, we need not consider whether the search of the envelope was permissible under the "plain view" exception to the Fourth Amendment.

### IV. CONCLUSION

For the reasons discussed above, we will affirm the judgment of the District Court.

---

view" exception to the Fourth Amendment. In the first instance, we shall address whether Pettiway had a reasonable expectation of privacy in the envelope.

[5] Although "individuals may assert a reasonable expectation of privacy in packages addressed to them under fictitious names," United States v. Villarreal, 963 F.2d 770, 774 (5th Cir. 1992), here the envelope was not addressed to a fictitious entity, but rather to an individual other than Pettiway. See United States v. Givens, 733 F.2d 339, 341-42 (4th Cir. 1984) (citing Walter v. United States, 447 U.S. 649, 654 (1980) (Stevens, J., dissenting); United States v. Richards, 638 F.2d 765, 770 (5th Cir.), cert. denied, 454 U.S. 1097 (1981)).